# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| SEAN MOONEY AND JONATHAN BONNETTE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ASHFORD, INC.,<br><br>Defendant. | Case No. 3:24-cv-00279-K |

## APPENDIX IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

| Tab | Description | Page |
|---|---|---|
| 1 | Settlement Agreement | App. 001 – App. 031 |
| A | Settlement Claim Form | App. 032 – App. 037 |
| B | [Proposed] Final Approval Order | App. 038 – App. 048 |
| C | Long Form Notice | App. 049 – App. 059 |
| D | Short Form Notice | App. 060 – App. 062 |
| E | [Proposed] Preliminary Approval Order | App. 063 – App. 071 |
| 2 | Joint Declaration in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement | App. 072 – App. 081 |
| A | Kendall Law Group Firm Resume | App. 082 – App. 094 |
| B | Milberg Coleman Firm Resume | App. 095 – App. 103 |
| C | Laukaitis Law Firm Resume | App. 104 – App. 107 |

Dated: January 31, 2025     Respectfully submitted,

/s/ *Joe Kendall*
Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
214-744-3000
214-744-3015 (Facsimile)
jkendall@kendalllawgroup.com

David K. Lietz (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
5335 Wisconsin Avenue NW
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

Kevin Laukaitis (admitted *pro hac vice*)
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4492
klaukaitis@laukaitislaw.com

*Counsel for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all counsel of record

on January 29, 2025 via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

/s/ *Joe Kendall*
JOE KENDALL

# __TAB 1__

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

SEAN MOONEY AND JONATHAN
BONNETTE, individually and on behalf of
all others similarly situated,

                Plaintiffs,

    v.

ASHFORD INC.

                Defendant.

Case No.: 3:24-cv-00279-K

(Consolidated with 3:24-cv-00408-E)

---

### SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of January 27, 2025 (the "Settlement Agreement" or "Settlement"), is made and entered into by and among the following Settling Parties: (i) Sean Mooney and Jonathan Bonnette (collectively the "Representative Plaintiffs"), individually and on behalf of the Settlement Class Members (as defined below), by and through Joe Kendall of the law firm Kendall Law Group, PLLC, David K. Lietz of the law firm Milberg Coleman Bryson Phillips Grossman, LLC, and Kevin Laukaitis of the law firm Laukaitis Law LLC (collectively, "Proposed Class Counsel" or "Class Counsel"); and (ii) Ashford Inc. ("Ashford" or "Defendant"), for the benefit of all Released Parties (as defined herein), by and through the Defendant's counsel of record, Stephen C. Rasch and J. Meghan McCaig of Holland & Knight LLP ("Defense Counsel"). This Settlement Agreement is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein), upon and subject to the terms and conditions hereof.

## I.      THE LITIGATION

This matter is a putative class action bearing Cause No. 3:24-cv-00279-K in the Northern District of Texas (the "Litigation") arising from a Data Incident (as defined below) whereby an unauthorized access to Ashford's data environment occurred in or about September 2023, and resulted in potential exfiltration of certain personal identifying information. This suit was brought on February 2, 2024 in the United States District Court for the Northern District of Texas by Plaintiff Sean Mooney in the case styled *Mooney v. Ashford Inc.*, Complaint, No. 3:24-cv-00279-K (N.D. Tex. Feb. 2, 2024). On that same day, Plaintiff Jonathan Bonnette filed suit against Ashford and a subsidiary, Remington Holdings, L.P., in state court in Dallas County in the case styled *Bonnette v. Ashford Inc.*, Petition, No. DC-24-01679 (68th Judicial District Court, Dallas County, Texas Feb. 2, 2024). Ultimately, Bonnette non-suited the state lawsuit, and Class Counsel filed a Consolidated Class Action Complaint, ECF. No. 21 in No. 3:24-cv-00279-K, that combined the two Representative Plaintiffs' claims in the federal lawsuit. Representative Plaintiffs asserted the following counts in the Consolidated Class Action Complaint:

- Count One – Negligence;

- Count Two – Negligence *Per Se*;

- Count Three – Breach of Implied Contract; and

- Count Four – Unjust Enrichment.

The Consolidated Class Action Complaint also sought equitable and injunctive relief.

On May 17, 2024, Ashford filed its Motion to Dismiss. [ECF No. 22]. The motion has not been resolved by the Court. On September 20, 2024, the Court entered an order staying and administratively closing the case pending settlement discussions, which led to this Settlement Agreement.

2

## II.       CLAIMS OF THE REPRESENTATIVE PLAINTIFFS

The Representative Plaintiffs believe the Claims asserted in the Litigation have merit.

The Representative Plaintiffs and Proposed Settlement Class Counsel, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against the Defendant through motion practice, trial, and potential appeals. They also have taken into account the uncertain outcome and the risk of further litigation, as well as the difficulties and delays inherent in such litigation.

The Representative Plaintiffs and Proposed Settlement Class Counsel believe that the settlement set forth in this Settlement Agreement confers substantial benefits upon the Settlement Class Members. They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

## III.      DENIAL OF WRONGDOING AND LIABILITY

Ashford denies each and every claim and contention alleged against it in the Litigation and all charges of wrongdoing or liability alleged against it. For the reasons reflected in the Motion to Dismiss [ECF No. 22], Ashford believes the Representative Plaintiffs' claims lack merit. Nonetheless, Defendant and its counsel have concluded that further continuation of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.      TERMS OF SETTLEMENT

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and among Representative Plaintiffs, individually and on behalf of the Settlement Class, by and through Proposed Settlement Class Counsel, and the Defendant agree that, subject to Final Approval by the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled,

and released as to all Released Parties, and the Litigation shall be dismissed with prejudice as to all Settling Parties, with all rights of appeal being waived, provided that the Court approves this Settlement Agreement as written. Such waiver of the right to appeal does not apply to the right of Class Counsel to appeal any award of their fees and costs that is less than what they applied for, upon and subject to the terms and conditions of this Settlement Agreement.

1. **Definitions**

As defined in the Settlement Agreement, the following terms have the meanings specified below:

a) **Action** or **Litigation** means *Mooney v. Ashford Inc.*, Complaint, No. 3:24-cv-00279-K (N.D. Tex. Feb. 2, 2024), pending in the United States District Court for the Northern District of Texas.

b) **Approved Claim(s)** means the timely submission of a Claim Form by a Settlement Class Member that has been approved by the Settlement Administrator.

c) **CAFA Notice** refers to any notifications required to be made pursuant to the Class Action Fairness Act of 2005, 28 U.S.C.A. § 1715.

d) **Claim Form** or **Claim** means the form(s), which is attached hereto as Exhibit A, that Settlement Class Members must submit to be eligible for reimbursement under the terms of the Settlement Agreement.

e) **Claims Deadline** means ninety (90) days following the Notice Deadline by which Settlement Class Members must file Claims online or, if by mail, the date by which the Claim must be postmarked.

4

f) The **Data Incident** refers to the unauthorized access to Ashford's data environment which occurred on or about September 20, 2023.

g) The **Effective Date** of this Settlement Agreement is the day after the day that (i) the Settlement Agreement has been given Final Approval and (ii) either (a) the time to appeal has lapsed with no appeal taken or (b) all appeals have been finally resolved in favor of settlement.

h) **Escrow Account** means the separate, interest-bearing escrow account to be established by the Settlement Administrator under terms acceptable to all Parties at a depository institution insured by the Federal Deposit Insurance Corporation. The Settlement Fund shall be deposited by Defendant into the Escrow Account in accordance with the terms of this Agreement and the money in the Escrow Account shall be invested in the following types of accounts and/or instruments and no other: (i) demand deposit accounts and/or (ii) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less. The costs of establishing and maintaining the Escrow Account shall be paid from the Settlement Fund. The Escrow Account shall be maintained by the Settlement Administrator.

i) **Fee Award** means the amount of attorneys' fees and reimbursement of expenses awarded by the Court to Class Counsel, which will be paid out of the Settlement Fund.

j) **Final** means one business day following the latest of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving the Settlement Agreement; (ii) if

APP. 006

there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari.

k)  **Final Approval** means the Final Judgment to be entered by the Court approving the Settlement Agreement, the Fee Award, and the service awards to the Class Representatives in the form set forth in Exhibit B, or substantially in that form to the mutual satisfaction of the Settling Parties in their sole discretion.

l)  **Net Settlement Fund** means the Settlement Fund less the following: Settlement Administration Expenses; any taxes due on earnings on the Settlement Fund, and any expenses related to the payment of such taxes; any Fee Award awarded by the Court; any Service Award awarded by the Court; and any other Court-approved deductions.

m) **Notice** means notice of the proposed class action settlement to be provided to Settlement Class Members in connection with a motion for preliminary approval and to direct notice to the Settlement Class.

n) **Notice Deadline** shall be the date 30 days after entry of the Preliminary Approval Order, or the first business day after 30 days (if 30 days falls on a Saturday, Sunday, or legal holiday) by which the Settlement Administrator shall provide Notice consistent with the form set forth in Exhibits C and D (Long and Short Form Notices) to the Settlement Class Members and establishment of a settlement website.

o) **Objection Deadline** means sixty (60) days after the Notice Deadline.

p) **Opt Out Deadline** means sixty (60) days after the Notice Deadline.

q) A **Person** is a living natural person who is resident in the United States.

r) **Preliminary Approval** means the Court's certification of the Settlement Class for settlement purposes, preliminary approval of this Settlement Agreement, and approval of the form and manner of the Notice in the form set forth in Exhibit E, or substantially in that form to the satisfaction of the Settling Parties in each of their sole discretion.

s) **Released Claims** means any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including "Unknown Claims," as defined below), whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, including all claims based on any state, federal, local, statutory or common law or any other law, rule or regulation,

7

against the Released Parties, or any of them, arising out of or relating to the Data Incident or any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged disclosure of the Settlement Class Members' personal information, including all claims that were brought or could have been brought in the Action relating to the alleged disclosure of the Settlement Class Members' personally identifiable information. Nothing herein is intended to release any claims any governmental agency or governmental actor has against Defendant.

t)  **Released Parties** are defined as (i) (A) the Defendant; (B) Ashford Hospitality Advisors LLC; (C) RED Hospitality & Leisure, LLC; (D) Premier Project Management LLC; (E) Ashford Securities LLC; (F) Inspire Event Technologies LLC; (G) Ashford Hospitality Services LLC; (H) SA Hotel Management; (I) Chesapeake Payroll Services LLC; (J) Remington Lodging & Hospitality, LLC; (K) RJE-Remington JFK Employers LLC; (L) ACS-ACSB Hospitality; (M) Remington Long Island Employers, LLC; (N) Remington Boston Employers LLC; (O) Remington Tarrytown Employers, LLC; (P) Remington Parsippany Employers, LLC; (Q) Remington Anchorage Employers, LLC; (R) Remington Hotels LLC; (S) Remington LaGuardia Employers, LLC; (T) Remington Philly Employers, LLC; (U) Axis Pro-US; (V) Arch Insurance Company; (V) Syndicate 2623/623 at Lloyd's; and (W) Starr Surplus Lines Insurance; (ii) each of the respective members, subsidiaries, and parents of the entities

8

identified in sub-part (i) above; and (iii) each of the respective representatives, shareholders, managers, officers, agents, directors, affiliates, employees, doctors, insurers, attorneys, predecessors, successors, and assigns of the persons and entities identified in sub-parts (i) and (ii) above.

u) **Releasing Parties** means Plaintiffs, those Settlement Class Members who do not timely opt out of the Settlement Class, and all of their respective present or past heirs, legatees, executors, estates, administrators, assigns, associates, employers, employees, agents, consultants, independent contractors, insurers, partners, attorneys, accountants, financial and other advisors, underwriters, lenders, representatives, and successors in interest.

v) **Service Awards** are defined as payments to Representative Plaintiffs for their service in bringing this Litigation.

w) The **Settlement Administrator** is Kroll Settlement Administration LLC.

x) **Settlement Administration Expenses** means the expenses incurred by the Settlement Administrator in providing Notice (including CAFA notice), processing claims, responding to inquiries from members of the Settlement Class, and, if necessary, mailing Notices and/or checks for Approved Claims, and related services.

y) **Settlement Amount** means Four Hundred and Seventy Thousand Dollars and Zero Cents ($470,000.00).

z) The **Settlement Class** will be defined as "All Persons residing in the United States who received notice from Ashford that their information was

9

involved in the Data Incident." Excluded from the Settlement Class are (a) all judges and their staffs assigned to this case and any members of their immediate families; (b) experts retained in this Litigation by the Parties; and (c) the Parties' counsel in this Litigation. To provide notice and make available the benefits of this Settlement Agreement to the intended beneficiaries, Defendant shall send to the Settlement Administrator a settlement class list of individuals who were sent one or more notices related to the Data Incident, including each Settlement Class Member's most current mailing address, to the extent that information is available; the Defendant, Class Counsel and the Settlement Administrator will work together in good faith to update, de-duplicate, and otherwise check available records to arrive at a final Settlement Class list that is as accurate as reasonably possible.

aa) **Settlement Class Members** shall be Persons in the Settlement Class. It is estimated that there are Settlement Class Members.

bb) **Settlement Fund** means the non-reversionary cash fund that shall be established by or on behalf of Defendant in the Settlement Amount, to be deposited into the Escrow Account, according to the schedule set forth herein, plus all interest earned thereon. The Settlement Fund shall be at all times a "qualified settlement fund" within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended. The Settlement Fund shall be kept in the Escrow Account with permissions granted to the Settlement

Administrator to access said funds until such time as the above-listed payments are made. The Settlement Fund includes all interest that shall accrue on the sums deposited in the Escrow Account. The Settlement Administrator shall be responsible for all tax filings with respect to any earnings on the Settlement Fund and the payment of all taxes that may be due on such earnings. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund Account or otherwise, including any taxes or tax detriments that may be imposed upon the Class Representatives, Class Counsel, Defendant, or Defendant's Counsel with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for purposes of federal or state income taxes or otherwise, shall be paid out of the Settlement Fund. Neither the Class Representatives, Class Counsel, Defendant, nor Defendant's Counsel shall have any liability or responsibility for any taxes arising with respect to the Settlement Fund. The Settlement Fund represents the total extent of Defendant's monetary obligations under this Settlement Agreement. In no event shall Defendant's total monetary obligation with respect to this Settlement Agreement exceed or be less than the Settlement Amount.

cc) **Unknown Claims** means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release

11

the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the settlement described in this Settlement Agreement. Upon the Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Upon the Effective Date, the Releasing Parties also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

2. **Terms**

The Parties agree to resolve the pending Litigation as follows:

APP. 013

a) Defendant shall pay or cause to be paid into the Escrow Account the Settlement Amount, as specified in Paragraph 1(y) of this Agreement, within thirty (30) days after Preliminary Approval.

b) Settlement Class Members shall have until the Claims Deadline to submit an Approved Claim. The Settlement Administrator shall pay a pro rata portion of the Net Settlement Fund for all Approved Claims through payment by check via first class U.S. mail. Payments to all Settlement Class Members with Approved Claims shall be made within sixty (60) days after the Effective Date.

c) Members of the Settlement Class must submit a Claim Form to receive a distribution payment from the Settlement Fund. Each Settlement Class Member is limited to the submission of one Claim Form and in no event shall a Settlement Class Member receive more than one distribution of Settlement Benefits, as defined below. The Settlement Administrator will only issue distributions to Settlement Class Members who submit timely and valid Claim Forms. To be entitled to receive a distribution under this Agreement, Settlement Class Members must properly complete a Claim Form and timely deliver it to the Settlement Administrator within ninety (90) days from the Notice Deadline. Any Settlement Class Member who fails to submit a valid and timely Claim Form will not receive any payment under this Agreement.

d) All Settlement Class Members may submit requests for settlement benefits as set forth below (together, the "Settlement Benefits"):

13

i.    Reimbursement for Documented Out-of-Pocket Loss; All
Settlement Class Members may submit a claim for Documented
Out-of-Pocket Losses up to two thousand and five hundred dollars
($2,500) per individual.

ii.    "Documented Out-of-Pocket Losses" means the unreimbursed costs
or expenditures incurred by a Settlement Class Member between
September 20, 2023 and the Claims Deadline, as result of the Data
Incident. Documented Out-of-Pocket Losses may include, but are
not limited to, unreimbursed costs, expenses, or charges incurred
addressing or remedying identity theft, fraud, or misuse of personal
information and/or other issues reasonably traceable to the Data
Incident.

iii.    Settlement Class Members who elect to submit a claim for
reimbursement of Documented Out-of-Pocket Losses must provide
to the Settlement Administrator the information required to evaluate
the claim, including: (1) the Settlement Class Member's name and
current address, (2) a brief description of the claimed out-of-pocket
expenses, and (3) documentation supporting their claimed losses.
Documentation supporting the claimed losses can include receipts
or other documentation supporting the costs incurred. "Self-
prepared" documents such as handwritten receipts are, by
themselves, insufficient to receive reimbursement, but can be

14

considered to add clarity to or support other submitted documentation.

iv.    Settlement Class Members seeking reimbursement for Documented Out-of-Pocket Losses must complete and submit either a written or online claim form to the Settlement Administrator, postmarked or electronically submitted on or before the Claims Deadline. The claim form must be verified by the Settlement Class Member with an attestation that the claimant believes that the losses or expenses claimed were incurred as a result of the Data Incident.

v.    <u>Pro Rata Cash Payments</u>: Settlement Class Members may also claim a pro rata cash payment by submitting a timely and valid claim form. The amount of the cash payment shall be increased or decreased on a pro rata basis, based on the funds remaining in the Settlement Fund following the payment of the following: the Fee Award, any Service Awards, the Costs of Settlement Administration, CAFA Notice, claims for Documented Out-of-Pocket Losses (as may be reduced pro rata, if required), and the cost of credit monitoring (as may be reduced pro rata, if required) (collectively, the "Total Cost of Settlement").

vi.    <u>Credit Monitoring</u>: All Settlement Class Members may submit a claim for three (3) years of single-bureau credit monitoring with up to $1 million in fraud insurance, the cost of which shall be paid from the Settlement Fund.

vii.    The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with weekly reports informing them of all Claim Forms received by the Settlement Administrator during each week following the Class Notice Date. No later than fourteen (14) days after the Claims Deadline, the Settlement Administrator must provide counsel with a Declaration reporting on the mailing of the Class Notice and identifying the number of Claim Forms, Requests for Exclusion, and objections received, which shall be filed with the motion for Final Approval.

e)    <u>Disbursement of Settlement Payments and Checks</u>: Within sixty (60) days after the Effective Date, the Settlement Administrator will disburse payments for Approved Claims to each Settlement Class Member who submits a timely and valid Claim Form. Payments may be made by electronic payment or by paper check. In the event that the aggregated amount of payment of all Approved Claims plus the aggregated Total Cost of Settlement exceeds the total amount of the Settlement Fund ($470,000), the value of the payments and other benefits provided to each Settlement Class Member who submitted an Approved Claim shall be reduced on a pro rata basis, such that the aggregate value of all payments and benefits for each Settlement Class Member who submitted an Approved Claim does not exceed the Settlement Fund (after payment of all Settlement Administration costs, Service Awards, and Fee Award). All pro rata reduction determinations shall be made by the Settlement Administrator.

16

f)  All cash payments issued to Settlement Class Members via check will state on the face of the check that it will expire and become null and void unless cashed within one hundred and eighty (180) days after the date of issuance. To the extent that any checks issued to a Settlement Class Member are not cashed within one-hundred eighty (180) days after the date of issuance, such uncashed check funds shall be redistributed on a pro rata basis (after first deducting any necessary settlement administration expenses from such uncashed check funds) to all Settlement Class Members who cashed checks or received electronic payments during the initial distribution, but only to the extent each Settlement Class Member would receive at least $5.00 in any such secondary distribution and if otherwise feasible. To the extent each Settlement Class Member would receive less than $5.00 in any such secondary distribution or if a secondary distribution would be otherwise infeasible, any uncashed check funds shall, subject to Court approval, revert to a non-sectarian, not-for-profit organization recommended by Class Counsel and approved by the Court.

g)  Upon payment of the Settlement Fund into the Escrow Account, all risk of loss shall pass to the Escrow Account. As of the Effective Date, any and all remaining interest or right of Defendant in or to the Escrow Account, if any, shall be extinguished. In the event that there is no Final Approval of the Settlement Agreement after the Settling Parties' reasonable efforts have been exhausted, all remaining Settlement Funds shall be returned to Defendant.

17

### 3. The Settlement Timeline Prior to Final Approval

a) By January 18, 2025, or a later date if permitted by the Court, the Proposed Class Counsel shall file a Motion for Preliminary Approval, along with Exhibits including the Settlement Agreement, Long and Short Form Notices, Claim Form, and Proposed Orders Granting Preliminary and Final Approval.

b) By forty-five (45) days following the Notice Deadline, Class Counsel shall submit a Motion for Attorney's Fees and Litigation Expenses.

c) Within thirty (30) days after Preliminary Approval, the Settlement Administrator shall provide Notice consistent with Exhibits C and D to the Settlement Class Members and establish a settlement website. The Settlement Administrator shall also provide CAFA Notice as directed by that statute.

d) Settlement Class Members shall have until ninety (90) days after the Notice Deadline to submit claim forms via the settlement website or may submit hard copies by USPS mail postmarked on or before the Claim Deadline, and consistent with the Claim Form attached in Exhibit A.

e) Settlement Class Members shall have until sixty (60) days after the Notice Deadline to file any objections to the settlement, consistent with the requirements set forth in Section 4, below.

f) Settlement Class Members shall have until sixty (60) days after the Notice Deadline to opt out of the settlement. Any Settlement Class Member who files an opt out shall be excluded from the Settlement Class, and not obtain

18

any benefit hereunder and will not be bound by the release herein. Each Settlement Class Member must opt out individually. No joint or *en masse* opt outs will be effective. Completed opt outs must be mailed to the Settlement Administrator.

g) Within thirty (30) days after the Claims Deadline, Proposed Settlement Class Counsel shall submit a motion for Final Approval to the Court for approval. As an attachment to this Motion, Proposed Settlement Class Counsel shall submit an affidavit from the Settlement Administrator as to the provision of notice and the administration of the benefits offered by the settlement.

**4.    The Settlement Timeline Subsequent to Final Approval**

a) Upon the Effective Date, each of the Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims.

b) Within fourteen (14) days of the Effective Date, any Court-approved attorney's fees and Service Awards will be paid by the Settlement Administrator.

i.    Defendant shall not object to Class Counsel applying for attorney's fees up to one-third of the maximum amount of Total Cost of Settlement, or $156,666.67. Class Counsel may also seek reasonable and necessary out-of-pocket litigation expenses, in addition to any fees requested.

19

    ii.    Defendant shall not object to a request for Service Awards to the Representative Plaintiffs of $2,500 for Plaintiffs Sean Mooney and Jonathan Bonnette.

c) Within sixty (60) days of the Effective Date, the Settlement Administrator shall calculate the Total Cost of Settlement and pay all Approved Claims according to the proration plan set forth herein.

d) Settlement Class Members must accept the deposit of all such payments within one hundred twenty (120) days of the Effective Date. The Settlement Administrator will contact any Settlement Class Member who has not cashed their settlement check or monies by that date, and to the extent necessary to effectuate the settlement payment, shall reissue the payment which shall be valid for sixty (60) days.  After that time, any checks uncashed or monies not deposited after that time will be deemed null and void, as though never issued. However, such Class Members who make a claim but never actually access their award will still be deemed to have released the Released Parties.

e) The Court will retain jurisdiction over the settlement for one hundred twenty (120) days after either (a) all amounts due under the settlement have been paid, with no excess funds or (b) the proposed and approved plan of distribution of excess funds has been implemented.

5.    **Objection Procedures**

a)  Each Settlement Class Member desiring to object to the settlement shall submit a timely written notice of his or her objection.

b)  Any objection must by in writing and must:

i.    Clearly identify the case name and number *Mooney, et al. v. Ashford Inc.*, United States District Court for the Northern District of Texas, No. 3:24-cv-00279-K;

ii.   Include the full name, address, telephone number, and email address of the person objecting;

iii.  Include the full name, address, telephone number, and email address of the objector's counsel (if the objector is represented by counsel);

iv.   State whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, and also state with specificity the grounds for the objection;

v.    Confirm whether the objector or counsel on the objector's behalf will personally appear and/or testify at the hearing on a motion for Final Approval; and

vi.    Provide the objector's signature and the signature of the objector's duly authorized counsel or other duly authorized representative.

c)  Settlement Class Members who fail to submit timely written objections in the manner specified will waive their right to object to any aspect of the settlement and will be bound by it.

d) Completed objections must be submitted via postal mail to the Settlement

Administrator at the following address:

Kroll Settlement Administration LLC
2000 Market Street, Suite 2700
Philadelphia, PA 19103

### 6. Duties of the Settlement Administrator

The Settlement Administrator shall perform the functions and duties necessary to effectuate

the settlement and as specified in this Settlement Agreement, including, but not limited to, the

following:

a) Obtaining the settlement class member list for the purpose of disseminating

Notice to Settlement Class Members;

b) Providing Notice to Settlement Class Members via U.S. mail;

c) Providing CAFA Notice to Settlement Class Members via U.S. mail;

d) Establishing and maintaining the Settlement website;

e) Establishing and maintaining a toll-free telephone line for Settlement Class

Members to call with Settlement-related inquiries, and answering the

questions of Settlement Class Members who call with or otherwise

communicate such inquiries timely;

f) Responding to any mailed or emailed Settlement Class Member inquiries

timely;

g) Reviewing, determining the validity of, and processing all claims submitted

by Settlement Class Members;

h) Receiving requests to opt out and objections from Settlement Class

Members and providing Class Counsel and Defendant's Counsel a copy

thereof no later than three (3) days following the deadline for submission of the same. If the Settlement Administrator receives any requests to opt out, objections, or other requests from Settlement Class Members after the Opt-Out and Objection Deadlines, the Settlement Administrator shall promptly provide copies thereof to Class and Defendant's Counsel;

i)   After the Effective Date, processing and transmitting Settlement Payments to Settlement Class Members and the approved fees and costs to Class Counsel;

j)   Providing weekly or other periodic reports to Class Counsel and Defendant's Counsel that include information regarding the number of Claims and later, Settlement Payments sent and delivered, payments accepted and cashed, undeliverable information, and any other requested information relating to Settlement Claims and Payments. The Settlement Administrator shall also, as requested by Class Counsel or Defendant's Counsel and from time to time, provide the amounts remaining from any funds paid by Defendant.

k)   In advance of the hearing on the motion for Final Approval, preparing an affidavit to submit to the Court that: (i) attests to implementation of Notice in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and properly submitted an Opt Out request; and

23

l)  Performing any function related to settlement administration at the agreed-upon instruction of Class Counsel or Defendant's Counsel, including, but not limited to, verifying that Settlement Payments have been distributed.

**7.  Miscellaneous Provisions**

a)  No Person shall have any claim against any of the Released Parties based on the administration of this Settlement Agreement.

b)  The Settling Parties: (i) acknowledge that it is their intent to consummate this Settlement Agreement; (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement; and (iii) in the event of denial of Preliminary Approval, Plaintiffs and Defendant will use all reasonable efforts that are consistent with this Settlement Agreement to cure any issues identified by the Court.  If, despite such efforts, the Court does not enter the Preliminary Approval Order, the case will proceed as if no settlement had been reached.

c)  The Settling Parties intend this Settlement Agreement to be a final and complete resolution of all disputes, claims, and causes of action by and between them with respect to the Litigation in any way whatsoever. The Settlement Agreement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith and at arms' length by the Settling Parties, and it

24

reflects an agreement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

d) Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement: (i) is, or may be deemed to be, or may be used as, an admission or evidence of the validity, or lack thereof, of any Released Claim, wrongdoing, or liability of the Released Parties; or (ii) is, or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission, in any civil, criminal, and/or administrative proceeding in any court, administrative agency, and/or other tribunal or proceeding. Any of the Released Parties may file the Settlement Agreement and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

e) The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest. Modification of the Settlement Agreement following Preliminary Approval will require approval of the Court.

f) The Settling Parties may mutually agree, in their respective sole discretion, on revisions to the Notice to better effectuate the purposes of the settlement, even after Preliminary Approval, provided that the substance of the Notice is consistent with the Settlement Agreement and the Court's order directing notice to the Settlement Class.

g) The Settling Parties may mutually agree, in their respective sole discretion, on any reasonable interpretation and implementation of the Settlement Agreement to better effectuate the purposes of the settlement.

h) This Settlement Agreement, together with the Exhibits attached hereto, constitutes the entire Settlement Agreement by, between, and among the Settling Parties hereto and no representations, warranties, or inducements have been made to any party concerning the Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in such document. Except as otherwise provided herein, each Party shall bear its own attorneys' fees and expenses.

i) Proposed Class Counsel, on behalf of the Settlement Class, are expressly authorized by Representative Plaintiffs to take all appropriate actions required or permitted to be taken by the Class pursuant to the Settlement Agreement to effectuate its terms. Proposed Class Counsel, on behalf of the Settlement Class, also are expressly authorized by Representative Plaintiffs to enter into any modifications or amendments to the Settlement Agreement on behalf of the Class that Proposed Class Counsel deem appropriate.

26

j) The Parties stipulate that the requirements are satisfied and that the Settlement Class may be conditionally certified as a class action pursuant to Federal Rule of Civil Procedure 23 subject to Court approval and for settlement purposes only in accordance with the terms of this Settlement Agreement and without prejudice to Defendant's right to contest class certification in the event that this Settlement Agreement fails to become effective or is not fully implemented in accordance with its terms.

k) If the Effective Date does not occur or this Agreement fails to be fully implemented, Defendant reserves all rights to object to any subsequent motion to certify a class in this Litigation, and no representation or concession made in connection with the settlement or this Settlement Agreement shall be considered law of the case or an admission by any Party or to have any kind of preclusive effect against any Party or to give rise to any form of estoppel or waiver by any Party in this Action.

l) The Settling Parties reserve all rights to object to any motion in any other proceeding, including a motion to certify a class or appoint class counsel, and no representation, concession, or stipulation made in connection with the settlement or this Settlement Agreement shall be considered an admission by any Settling Party or to have any kind of preclusive effect against any Settling Party or to give rise to any form of estoppel or waiver by any Settling Party in any other proceeding.

27

m) The Parties to this Settlement Agreement warrant and represent that they have the power, authority, and capacity to enter into this Settlement Agreement.

n) The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

o) This Settlement Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Texas, and the rights and obligations of the Settling Parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Texas.

**[THIS SECTION INTENTIONALLY LEFT BLANK.
SIGNATURES ON FOLLOWING PAGE.]**

APP. 029

Signatures:

*Attorneys for Plaintiffs Sean Mooney,*      *Defendant Ashford Inc.*
*Jonathan Bonnette, and Proposed Class*


_____            _____
Joe Kendall                            Name: Alex Rose
**KENDALL LAW GROUP, PLLC**            Title:   Executive  Vice  President,  General
                                       Counsel & Secretary

_____
David K. Lietz                         *Attorneys for Defendant*
**MILBERG COLEMAN BRYSON**             *Ashford Inc.*
**PHILLIPS GROSSMAN, LLC**


_____            _____
Kevin Laukaitis                        Stephen C. Rasch
**LAUKAITIS LAW LLC**                  J. Meghan McCaig
                                       **HOLLAND & KNIGHT LLP**

Signatures:

*Attorneys for Plaintiffs Sean Mooney,*     *Defendant Ashford Inc.*
*Jonathan Bonnette, and Proposed Class*

_____          _____
Joe Kendall                              Name: Alex Rose
**KENDALL LAW GROUP, PLLC**               Title:   Executive Vice President, General
                                         Counsel & Secretary

_____
David K. Lietz                           *Attorneys for Defendant*
**MILBERG COLEMAN BRYSON**                *Ashford Inc.*
**PHILLIPS GROSSMAN, LLC**

                                         _____
_____
Kevin Laukaitis                          Stephen C. Rasch
**LAUKAITIS LAE LLC**                     J. Meghan McCaig
                                         **HOLLAND & KNIGHT LLP**

29

# EXHIBIT A

Ashford Inc. Settlement Administrator

**Your Claim Form Must Be Submitted Electronically or Postmarked by [ADD DATE]**

[ADD ADDRESS and WEBSITE]

United States District Court for the Northern District of Texas
*Mooney et al. v. Ashford Inc.*
Civil Litigation No. 3:24-cv-00279-K

**SETTLEMENT PAYMENT CLAIM FORM**

**IN ORDER TO BE VALID, THIS CLAIM FORM MUST BE RECEIVED ONLINE AT [INSERT WEBSITE] OR POSTMARKED NO LATER THAN [INSERT DATE].**

**ATTENTION**: This Claim Form may be used by individuals who received direct notice from Ashford Inc. ("Ashford" or "Defendant") that their personally identifiable information may have been implicated in the unauthorized access to Ashford's data environment which occurred on or about September 20, 2023 ("Data Incident"). All Settlement Class Members are eligible to claim: (i) up to two thousand five hundred dollars ($2,500) reimbursement of documented out-of-pocket losses that are reasonably traceable to the Data Incident ("Documented Out-of-Pocket Losses"); (ii) a pro rata cash payment ("Pro Rata Cash Payment"); and (iii) up to three years of single-bureau credit monitoring ("Credit Monitoring").

To submit a Approved Claim, you must have been identified as a Settlement Class Member and received Postcard Notice of this Settlement with a **unique Claim Number**. You are a Settlement Class Member if you received direct notice that your Personal Information may have been implicated in the Data Incident.

You may file a claim for reimbursement for Documented Out-of-Pocket Losses. Documented Out-of-Pocket Losses consist of actual, documented out-of-pocket monetary losses, up to two thousand five hundred dollars ($2,500).

In addition to seeking reimbursement for Documented Out-of-Pocket Losses, you may also make a claim for a Pro Rata Cash Payment.

In addition to the Documented Out-of-Pocket Losses and Pro Rata Cash Payment, you may also make a claim for up to three years of Credit Monitoring.

**PLEASE BE ADVISED** that any documentation you provide in support of your Documented Out-of-Pocket Losses claim must be submitted **WITH** this Claim Form. No documentation is required for claiming the Pro Rata Cash Payment or the Credit Monitoring.

**CLAIM VERIFICATION:** All claims are subject to verification. You will be notified if additional information is needed to verify your claim.

**ASSISTANCE:** If you have questions about this Claim Form, please visit the Settlement Website at [INSERT] for additional information or call [INSERT PHONE NUMBER].

**PLEASE KEEP A COPY OF YOUR CLAIM FORM AND PROOF OF MAILING FOR YOUR RECORDS.**

1

APP. 033

**Failure to submit required documentation, or to complete all parts of the Claim Form, may result in denial of the claim, delay its processing, or otherwise adversely affect the claim.**

## REGISTRATION

First Name:             MI:    Last Name:

Mailing Address:

City:                             State:    ZIP Code:

Telephone Number:

Email Address:

**Please provide the Claim Number identified in the Postcard Notice that was mailed to you:**

*Instructions. Please follow the instructions below and answer the questions as instructed.*

## CLAIM INFORMATION

*Section A. Confirm Your Eligibility*

**Did you receive a unique Claim Number indicating that you may be a member of the Settlement Class?**

□ Yes □ No

> *If yes, continue to the next question. If no, you are not a member of the Settlement Class and do not qualify to file a claim.*

*Section B. Reimbursement for Documented Out-of-Pocket Losses*

You may submit a claim for reimbursement of documented out-of-pocket losses reasonably traceable to the Data Incident.

If it is verified that you meet all the criteria described in the Settlement Agreement and you submit the dollar amount of those losses along with sufficient documentation, you will be eligible to receive a payment compensating you for your losses of up to two thousand five hundred dollars (**$2,500**).

Examples of documentation that can be used to support your claim include: receipts, account statements, etc. You may also support your claim by submitting information on the Claim Form that describes the expenses and how they were incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity to or support other submitted documentation.

2

Providing documentation for your claimed losses does not guarantee that you will be entitled to receive the full amount claimed. All Approved Claims will also be subject to an aggregate maximum payment amount, as explained in the Settlement Agreement. If the amount of losses claimed exceeds the maximum amount of money available under the Settlement Agreement, then the payment for your claim will be reduced on a pro rata basis. If you would like to learn more, please review the Settlement Agreement for further details.

Payment for your Approved Claim will be paid directly to you electronically unless you request to be paid by check as indicated below.

**If you expended money as a result of fraud or identity theft reasonably traceable to the Data Incident, you are eligible to see reimbursement for those documented, out-of-pocket losses. Examples include, without limitation:**

- Unreimbursed losses relating to fraud or identity theft;
- Professional fees including attorneys' fees, accountants' fees, and fees for credit repair services;
- Costs associated with freezing or unfreezing credit with any credit reporting agency;
- Credit monitoring costs that were incurred on or after November 9, 2023; and
- Other expenses reasonably attributable to the Data Incident, such as notary, data charges (if charged based on the amount of data used) fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges.

For each loss that you believe can be traced to the Data Incident, please provide a description of the loss, the date of the loss, the dollar amount of the loss, and the type of documentation you will be submitting to support the loss. **You must provide this information for this Claim Form to be processed**. Supporting documentation must be submitted alongside this Claim Form. **If you fail to provide sufficient supporting documents, the Settlement Administrator will deny your claim.** Please provide only copies of your supporting documents and keep all originals for your personal files. The Settlement Administrator will have no obligation to return any supporting documentation to you. A copy of the Settlement Administrator's privacy policy is available at [Insert Website]. Please do not directly communicate with Ashford regarding this matter. All inquiries are to be sent to the Settlement Administrator.

Examples of documentation include receipts for identity theft protection services, etc.

| Description of the Loss | Date of Loss | Amount | Type of Supporting Documentation |
|---|---|---|---|
| Example: Unauthorized credit card charge | ☐☐ - ☐☐ - ☐☐ MM DD YY | $50.00 | Letter from Bank |
| Example: Fees paid to a professional to remedy a falsified tax return | ☐☐ - ☐☐ - ☐☐ MM DD YY | $25.00 | Copy of the professional services bill |
| | ☐☐ - ☐☐ - ☐☐ MM DD YY | $☐☐☐☐ · ☐☐ | |
| | ☐☐ - ☐☐ - ☐☐ MM DD YY | $☐☐☐☐ · ☐☐ | |
| | ☐☐ - ☐☐ - ☐☐ MM DD YY | $☐☐☐☐ · ☐☐ | |
| | ☐☐ - ☐☐ - ☐☐ MM DD YY | $☐☐☐☐ · ☐☐ | |

3

APP. 035

| | MM - DD - YY | $ ☐☐☐☐ . ☐☐ | |
|---|---|---|---|
| | MM - DD - YY | $ ☐☐☐☐ . ☐☐ | |
| | MM - DD - YY | $ ☐☐☐☐ . ☐☐ | |
| | MM - DD - YY | $ ☐☐☐☐ . ☐☐ | |
| | MM - DD - YY | $ ☐☐☐☐ . ☐☐ | |
| | MM - DD - YY | $ ☐☐☐☐ . ☐☐ | |
| | MM - DD - YY | $ ☐☐☐☐ . ☐☐ | |

By checking the below box, I hereby declare under penalty of perjury that the information provided in this Claim Form to support the claimed Documented Out-of-Pocket Losses is true and correct.

☐ **Yes, I understand that I am submitting this Claim Form and the affirmations it makes as to my seeking relief for Documented Out-of-Pocket Losses under penalty of perjury. I further understand that my failure to check this box may render my claim for Documented Out-of-Pocket Losses null and void.**

### *Section C. Pro Rata Cash Payment*

In addition to compensation for Documented Out-of-Pocket Losses, you may also make a claim for a Pro Rata Cash Payment.

The amount of this pro rata cash payment may increase or decrease depending upon the number of Approved Claims made.

By checking the below box, I choose a Pro Rata Cash Payment.

☐ **Yes, I choose a Pro Rata Cash Payment.**

### *Section D. Identity Theft Protection and Credit Monitoring*

In addition to the Documented Out-of-Pocket Losses and Pro Rata Cash Payment, you may also make a claim for up to three years of single-bureau credit monitoring. The duration of such credit monitoring may decrease depending upon the number of Approved Claims made.  An activation code for this service will be emailed to you after the Settlement is finally approved by the Court and the time for all appeals has expired.

By checking the below box, I choose to receive up to three years of Credit Monitoring.

☐ ***Yes, I choose to receive up to three years of Credit Monitoring.***

4

*Section E. Settlement Class Member Affirmation*

By submitting this Claim Form and checking the box below, I declare that I received notification from Ashford that my personally identifiable information may have been implicated in the Data Incident. I declare that the claim of losses I have submitted are reasonably traceable to the Data Incident.

I understand that my claim and the information provided above will be subject to verification.

By submitting this Claim Form, I certify that any documentation that I have submitted in support of my claim consists of unaltered documents in my possession.

☐ **Yes, I understand that my failure to check this box may render my claim null and void.**

Please include your name in both the Signature and Printed Name fields below.

Signature: _____

Print Name: _____

Date: _____


**IN ORDER TO BE VALID, THIS CLAIM FORM MUST BE MAILED BY OR
RECEIVED ONLINE AT [INSERT WEBSITE]
NO LATER THAN [INSERT CLAIMS DEADLINE]**

# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| SEAN MOONEY AND JONATHAN BONNETTE, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>ASHFORD, INC.<br><br>     Defendant. | Case No. 3:24-cv-00279-K<br><br>(Consolidated with 3:24-cv-00408-E) |

## [PROPOSED] FINAL APPROVAL ORDER

Before the Court is the Unopposed Motion for Final Approval of Class Action Settlement (the "Motion for Final Approval") filed by Plaintiffs Sean Mooney and Jonathan Bonnette ("Plaintiffs"). The Motion seeks approval of the settlement as fair, reasonable, and adequate. Also before the Court is Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses to Class Counsel, and Service Award to Plaintiffs ("Motion for Attorneys' Fees").

Having reviewed and considered the Settlement Agreement, Motion for Final Approval, and Motion for Attorneys' Fees, and having conducted a Final Fairness Hearing, the Court makes the findings and grants the relief set forth below approving the settlement upon the terms and conditions set forth in this Order.

WHEREAS, on _____[DATE], the Court entered an Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (Doc. No. __) which, among other things: (a) conditionally certified this matter as a class action, including

defining the class and class claims, (b) appointed Plaintiffs as the Class Representatives and appointed Joe Kendall of the law firm Kendall Law Group, PLLC, David K. Lietz of the law firm Milberg Coleman Bryson Phillips Grossman, LLC, and Kevin Laukaitis of the law firm Laukaitis Law LLC as Class Counsel; (c) preliminarily approved the Settlement Agreement; (d) approved the form and manner of Notice to the Settlement Class; (d) set deadlines for opt-outs and objections; (e) approved and appointed Kroll Settlement Administration LLC as the Settlement Administrator; and (f) set the date for the Final Fairness Hearing;

WHEREAS, on _____ [DATE], pursuant to the Notice requirements set forth in the Settlement Agreement and in the Preliminary Approval Order, the Settlement Class was notified of the terms of the proposed Settlement Agreement, of the right of Settlement Class Members to opt-out, and the right of Settlement Class Members to object to the Settlement Agreement and to be heard at a Final Fairness Hearing;

WHEREAS, on _____ [DATE], the Court held a Final Approval Hearing to determine, inter alia: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate for the release of the claims contemplated by the Settlement Agreement; and (2) whether judgment should be entered dismissing this action with prejudice. Prior to the Final Fairness Hearing, a declaration of compliance with the provisions of the Settlement Agreement and Preliminary Approval Order relating to notice was filed with the Court as required by the Preliminary Approval Order. Therefore, the Court is satisfied that Settlement Class Members were properly notified of their right to appear at the Final Fairness Hearing in support of or in opposition to the proposed Settlement Agreement, the award of attorneys' fees, costs, and expenses to Class Counsel, and the payment of a Service Award to the Class Representative;

APP. 040

WHEREAS, the Court not being required to conduct a trial on the merits of the case or determine with certainty the factual and legal issues in dispute when determining whether to approve a proposed class action settlement; and

WHEREAS, the Court being required under Federal Rule of Civil Procedure 23(e) to make the findings and conclusions hereinafter set forth for the limited purpose of determining whether the settlement should be approved as being fair, reasonable, adequate and in the best interests of the Settlement Class;

Having given an opportunity to be heard to all requesting persons in accordance with the Preliminary Approval Order, having heard the presentation of Class Counsel and counsel for Defendant Ashford Inc. ("Ashford"), having reviewed all of the submissions presented with respect to the proposed Settlement Agreement, having determined that the Settlement Agreement is fair, adequate, and reasonable, having considered the application made by Settlement Class Counsel for attorneys' fees, costs, and expenses, and the application for a Service Award to the Representative Plaintiffs, and having reviewed the materials in support thereof, and good cause appearing:

**IT IS ORDERED** that:

1.      The Court has jurisdiction over the subject matter of this action and over all claims raised therein and all Parties thereto, including the Settlement Class.

2.      The settlement involves allegations in Plaintiffs' Class Action Complaint against Defendant for failure to implement or maintain adequate data security measures and safeguards to protect personally identifiable information, which Plaintiffs allege directly and proximately caused injuries to Plaintiffs and Settlement Class Members.

APP. 041

3.      The settlement does not constitute an admission of liability by Defendant, and the Court expressly does not make any finding of liability or wrongdoing by Defendant.

4.      Unless otherwise indicated, words spelled in this Order and Judgment Granting Final Approval of Class Action Settlement ("Final Order and Judgment") with initial capital letters have the same meaning as set forth in the Settlement Agreement.

5.      The Court, having reviewed the terms of the Settlement Agreement submitted by the Parties pursuant to Federal Rule of Civil Procedure 23(e)(2), grants final approval of the Settlement Agreement and for purposes of the Settlement Agreement and this Final Order and Judgment only, the Court hereby finally certifies the following Settlement Class for settlement purposes only:

6.      All Persons residing in the United States who received notice from Ashford that their information was involved in the Data Incident.

> Excluded from the Settlement Class are: (1) the judges presiding over this Action and members of their direct families; (2) the Parties' counsel in this Litigation; and (3) Settlement Class Members who submitted a valid Request for Exclusion prior to the Opt-Out Deadline.

7.      The settlement was entered into in good faith following arm's length negotiations and is non-collusive. The settlement is in the best interests of the Settlement Class and is therefore approved. The Court finds that the Parties faced significant risks, expenses, delays, and uncertainties, including as to the outcome, including on appeal, of continued litigation of this complex matter, which further supports the Court's finding that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class Members. The Court finds that the uncertainties of continued litigation in both the trial and appellate courts, as well as the expense associated with it, weigh in favor of approval of the settlement reflected in the Settlement Agreement.

8.     The Settlement Agreement provides, in part, and subject to a more detailed description of the settlement terms in the Settlement Agreement, for:

a.     Claims Administration as outlined in the Settlement Agreement whereby Settlement Class Members can submit claims that will be evaluated by a Settlement Administrator.

b.     The Claims Administrator to pay all costs of Claims Administration from the Settlement Fund (funded by Defendant), including the cost of the Settlement Administrator, instituting Notice, processing and administering claims, and preparing and mailing checks.

c.     The Claims Administrator to pay, subject to the approval and award of the Court, the reasonable attorneys' fees, costs, and expenses of Class Counsel and Service Awards to the Class Representative from the Settlement Fund.

9.     The Court readopts and incorporates herein by reference its preliminary conclusions as to the satisfaction of Federal Rule of Civil Procedure 23(a) and (b)(3) set forth in the Preliminary Approval Order and notes that because this certification of the Settlement Class is in connection with the Settlement Agreement rather than litigation, the Court need not address any issues of manageability that may be presented by certification of the class proposed in the Settlement Agreement.

a.     The terms of the Settlement Agreement are fair, adequate, and reasonable and are hereby approved, adopted, and incorporated by the Court. Notice of the terms of the settlement, the rights of Settlement Class Members under the settlement, the Final Fairness Hearing, Plaintiffs' application for attorneys' fees, costs, and expenses, and the Service Award payment to the Class Representatives have been provided to Settlement Class Members as directed by this Court's Orders, and proof of Notice has been filed with the Court.

b.    The Court finds that the notice program, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order, was the best notice practicable under the circumstances, was reasonably calculated to provide and did provide due and sufficient notice to the Settlement Class of the pendency of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and their right to object and to appear at the final approval hearing or to exclude themselves from the Settlement Agreement, and satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and other applicable law

10.    The Court finds that Defendant has fully complied with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

11.    As of the Opt-Out deadline, _____ potential Settlement Class Members have requested to be excluded from the settlement. Their unique Class Member identifiers are set forth in Exhibit ___ to the supporting declaration of the Settlement Administrator. (Doc. No. ___). Those persons are not bound by the Settlement Agreement and this Final Order and Judgment and shall not be entitled to any of the benefits afforded to the Settlement Class Members under the Settlement Agreement, as set forth in the Settlement Agreement.

12.    _____ objections were filed by Settlement Class Members. The Court has considered all objections and finds the objections do not counsel against Settlement Agreement approval, and the objections are hereby overruled in all respects.

All Settlement Class Members who have not objected to the Settlement Agreement in the manner provided in the Settlement Agreement are deemed to have waived any objections by appeal, collateral attack, or otherwise.

13.    The Court has considered all the documents filed in support of the settlement, and has fully considered all matters raised, all exhibits and affidavits filed, all evidence received at the

Final Fairness Hearing, all other papers and documents comprising the record herein, and all oral arguments presented to the Court.

14.    The Parties, their respective attorneys, and the Claims Administrator are hereby directed to consummate the settlement in accordance with this Final Order and Judgment and the terms of the Settlement Agreement.

15.    Pursuant to the Settlement Agreement, Defendant, the Claims Administrator, and Class Counsel shall implement the settlement in the manner and timeframe as set forth therein.

16.    Within the time period set forth in the Settlement Agreement, the relief provided for in the Settlement Agreement shall be made available to the various Settlement Class Members submitting valid Claim Forms, pursuant to the terms and conditions of the Settlement Agreement.

17.    Pursuant to and as further described in the Settlement Agreement, Plaintiffs and the Settlement Class Members release claims as follows:

18.    Upon the Effective Date, each of the Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims.

19.    The Court grants final approval to the appointment of Plaintiffs as Class Representatives. The Court concludes that Class Representatives have fairly and adequately represented the Settlement Class and will continue to do so.

20.    Pursuant to the Settlement Agreement, and in recognition of their efforts on behalf of the Settlement Class, the Court approves a payment to the Class Representatives in the amount of $_____ each as a Service Award. Defendant shall make such payment in accordance with the terms of the Settlement Agreement.

21.    The Court grants final approval to the appointment of Joe Kendall of the law firm Kendall Law Group, PLLC, David K. Lietz of the law firm Milberg Coleman Bryson Phillips Grossman, LLC, and Kevin Laukaitis of the law firm Laukaitis Law LLC as Class Counsel. The Court concludes that Class Counsel has adequately represented the Settlement Class and will continue to do so.

22.    The Court, after careful review of the fee petition filed by Class Counsel, and after applying the appropriate standards required by relevant case law, hereby grants Class Counsel's application for attorneys' fees in the amount of $_____. Reasonable costs and expenses of $_____ are also hereby awarded. Payment shall be made pursuant to the terms of the Settlement Agreement.

23.    This Final Order and Judgment and the Settlement Agreement, and all acts, statements, documents, or proceedings relating to the Settlement Agreement are not, and shall not be construed as, used as, or deemed to be evidence of, an admission by or against Defendant of any claim, any fact alleged in the Litigation, any fault, any wrongdoing, any violation of law, or any liability of any kind on the part of Defendant's or of the validity or certifiability for litigation of any claims that have been, or could have been, asserted in the lawsuit. This Final Order and Judgment, the Settlement Agreement, and all acts, statements, documents, or proceedings relating to the Settlement Agreement shall not be offered or received or be admissible in evidence in any action or proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing of any nature or that Plaintiffs, any Settlement Class Member, or any other person has suffered any damage; provided, however, that the Settlement Agreement and this Final Order and Judgment may be filed in any action by Defendant, Class Counsel, or Settlement Class Members seeking to enforce the Settlement Agreement or the Final Order and Judgment

8

APP. 046

(including, but not limited to, enforcing the releases contained herein). The Settlement Agreement and Final Order and Judgment shall not be construed or admissible as an admission by Defendant that Plaintiff's claims or any similar claims are suitable for class treatment. The Settlement Agreement's terms shall be forever binding on, and shall have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings as to Released Claims and other prohibitions set forth in this Final Order and Judgment that are maintained by, or on behalf of, any Settlement Class Member or any other person subject to the provisions of this Final Order and Judgment.

24.     If the Effective Date, as defined in the Settlement Agreement, does not occur for any reason, this Final Order and Judgment and the Preliminary Approval Order shall be deemed vacated, and shall have no force and effect whatsoever; the Settlement Agreement shall be considered null and void; all of the Parties' obligations under the Settlement Agreement, the Preliminary Approval Order, and this Final Order and Judgment and the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated nunc pro tunc, and the Parties shall be restored to their respective positions in the Litigation, as if the Parties never entered into the Settlement Agreement. In such event, the Parties will jointly request that all scheduled Litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Party or Party's counsel. Further, in such event, Defendant will pay amounts already billed or incurred for costs of notice to the Settlement Class, and Claims Administration, and will not, at any time, seek recovery of same from any other Party to the Litigation or from counsel to any other Party to the Litigation.

APP. 047

25.     Pursuant to *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 382, 114 S. Ct. 1673, 1677, 128 L. Ed. 2d 391 (1994) and the parties' agreement, this Court shall retain the authority to issue any order necessary to protect its jurisdiction from any action, whether in state or federal court.

26.     Without affecting the finality of this Final Order and Judgment, the Court will retain jurisdiction over the subject matter and the Parties with respect to the interpretation and implementation of the Settlement Agreement for all purposes.

27.     This Order resolves all claims against all Parties in this action and is a final order.

28.     The matter is hereby dismissed with prejudice and without costs except as provided in the Settlement Agreement.

SO ORDERED THIS _____ DAY OF _____, 2025.


_____
United States District Court Judge

APP. 048

# EXHIBIT C

**NOTICE OF CLASS ACTION SETTLEMENT**

United States District Court for the Northern District of Texas
*Mooney et al. v. Ashford Inc.*
Civil Litigation No. 3:24-cv-00279-K

<u>To:</u>    **All Persons residing in the United States who received notice from Ashford that their information was involved in the Data Incident.**

A proposed settlement has been reached in the putative class action lawsuit titled *Mooney et al. v. Ashford Inc.,* Civil Litigation No. 3:24-cv-00279-K (the "Litigation"). The Litigation arises out of Plaintiffs' claims against Ashford Inc. ("Defendant" or "Ashford") related to the unauthorized access to Ashford's data environment which occurred on or about September 20, 2023 ("Data Incident"). Defendant denies all charges of wrongdoing or liability, and denies all claims or contentions alleged against it.

If you received direct notice that your Personal Information may have been implicated in the Data Incident, you are included in this settlement as a member of the Settlement Class.

Under the settlement, Defendant has agreed to establish a $470,000 Settlement Fund which will be used to pay (i) settlement benefits; (ii) the costs of Settlement Administration; (iii) Plaintiffs' Counsel's Fees and Expenses; and (iv) Service Awards.

Settlement Class Members may submit claims for benefits under the settlement. Certain of the amounts paid will depend upon how many Settlement Class Members submit Approved Claims, but initially are set at the following amounts:

(1)    <u>Documented Out-of-Pocket Losses:</u> Reimbursement of up to two thousand five hundred dollars **($2,500)** for unreimbursed costs or expenditures incurred by a Settlement Class Member between September 20, 2023 and the Claims Deadline, as a result of the Data Incident. Documented Out-of-Pocket Losses may include, but are not limited to, unreimbursed costs, expenses, or charges incurred addressing or remedying identity theft, fraud, or misuse of Personal Information and/or other issues reasonably traceable to the Data Incident;

(2)    <u>Pro Rata Cash Payment:</u> In addition to payments for Documented Out-of-Pocket Losses, the settlement provides for a Pro Rata Cash Payment; and

(3)    Credit Monitoring:  Three Years of single-bureau credit monitoring with up to $1 million in fraud insurance.

Your legal rights will be affected whether you act or do not act. You should read this entire Notice carefully:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **File a Claim Form** <br> **Deadline: DATE** | You must submit a valid Claim Form to receive a cash payment or credit monitoring from this settlement. <br> If you submit a Claim Form, you will give up the right to sue Defendant and the other Released Parties (as defined in the Settlement Agreement) in a separate lawsuit about the legal claims this settlement resolves. |

1

| Exclude Yourself from This Settlement Deadline: DATE | You may exclude yourself from this settlement and keep your right to sue separately. If you exclude yourself, you will receive no payment. Exclusion instructions are provided in this Notice. |
|---|---|
| Object to or Comment on the Settlement Deadline: DATE | If you do not exclude yourself, you may write to the Court to comment on or detail why you do not like the settlement by following the instructions in this Notice. The Court may reject your objection. You must still file a Claim Form if you desire any monetary relief under the settlement. |
| Go to the Final Approval Hearing on DATE | You may attend the Final Approval Hearing where the Court may hear arguments concerning approval of the settlement. If you wish to speak at the Final Approval Hearing, you must make a request to do so in your written objection or comment. You are not required to attend the Final Approval Hearing. |
| Do Nothing | If you do nothing, you will receive no cash payment or credit monitoring and will no longer be able to sue Defendant or the other Released Parties over the claims resolved in the settlement. |

The Court must give final approval to the settlement before it takes effect, but has not yet done so. No payments will be made until after the Court gives final approval and any appeals are resolved. **Please review this Notice carefully.** You can learn more about the settlement by visiting **www._____.com** or by calling 1-800-XXX-XXXX.

**Further Information about this Notice and the Litigation**

*1.     Why was this notice issued?*

Settlement Class Members are eligible to receive benefits from a proposed settlement in the Litigation. The Court overseeing the Litigation authorized this notice to advise Settlement Class Members about the proposed settlement that will affect their legal rights. This notice explains certain legal rights and options Settlement Class Members have in connection with the settlement.

*2.     What is the Litigation about?*

The Litigation is a putative class action lawsuit brought on behalf of all individuals who received direct notice that their personal information may have been implicated in the Data Incident.

The Litigation claims that Defendant is legally responsible for the Data Incident and asserts various legal claims including negligence, negligence *per se*, breach of implied contract, and unjust enrichment. Defendant denies each and all of the claims and contentions alleged against it in the Complaint. Defendant denies all charges of wrongdoing or liability as alleged, or which could be alleged.

2

3.      *Why is the Litigation a class action?*

In a class action, one or more representative plaintiffs bring a lawsuit on behalf of others who have similar claims. Together, all these people are the "Settlement Class," and each individual is a "Settlement Class Member." There are two Class Representatives in this case: Sean Mooney and Jonathan Bonnette.

4.      *Why is there a settlement?*

The Plaintiffs in the Litigation, through their attorneys, investigated the facts and law relating to the issues in the Litigation. The Plaintiffs and Class Counsel believe that the settlement is fair, reasonable, and adequate and will provide substantial benefits to the Settlement Class. The Court has not decided whether the Class Representatives' claims or Defendant's defenses have any merit, and it will not do so if the proposed settlement is approved. By agreeing to settle, both sides avoid the cost and risk of a trial, and members of the Settlement Class who submit Approved Claims will receive certain benefits. The settlement does not mean that Defendant did anything wrong, or that the Class Representatives and the Settlement Class would or would not win the case if it were to go to trial.

## Terms of the Proposed Settlement

5.      *Who is in the Settlement Class?*

The Settlement Class is defined as "[a]ll Persons residing in the United States who received notice from Ashford that their information was involved in the Data Incident."

Excluded from the Settlement Class are the following individuals and/or entities: (1) all persons who submit a timely and valid request for exclusion from the Settlement Class; (2) all judges and their staffs assigned to this case and any members of their immediate families; (3) experts retained in this Litigation by the Parties; and (5) the Parties' counsel in this Litigation.

6.      *What are the terms of the settlement?*

The proposed settlement includes a Settlement Fund of four hundred and seventy thousand dollars ($470,000) that will be used to pay all costs of the settlement, including: (i) settlement benefits; (ii) the costs of Settlement Administration; (iii) Plaintiffs' Counsel's Fees and Expenses, not to exceed one third of the Settlement Fund, or one hundred fifty-six thousand six hundred and sixty-six dollars and sixty-seven cents ($156,666.67); and (iv) Service Awards, not to exceed two thousand five hundred dollars ($2,500) to each Class Representative.

The Settlement Agreement also releases all Released Claims (as defined in the Settlement Agreement) against all Released Parties.

3

7.    *What claims are Settlement Class Members giving up under the settlement?*

Settlement Class Members who do submit timely and valid Opt Out request will be bound by the settlement and any final judgment entered by the Court and will give up their right to sue Defendant or the other Released Parties for the claims being resolved by the Settlement Agreement, including all claims or potential claims of Settlement Class Members against Defendant arising from or related to the Data Incident. The claims that Settlement Class Members are releasing are described in the Settlement Agreement.

## **Payments to Settlement Class Members**

8.    *What kind of payments can Settlement Class Members receive?*

Settlement Class Members who submit Approved Claims and any required documentation may receive one or more of the following, to be paid from the Settlement Fund: (i) Documented Out-of-Pocket Losses, which provides reimbursement of up to two thousand and five hundred dollars ($2,500) for any documented out-of-pocket losses; (ii) a pro rata cash payment; and (iii) up to three (3) years of single-bureau credit monitoring with up to $1 million in fraud insurance ("Credit Monitoring").

Depending on how many Approved Claims are submitted, the amounts of the pro rata cash payment will be adjusted upward or downward proportionally among Settlement Class Members submitting Approved Claims for those awards, as explained further below in Question 11.  The duration of credit monitoring and the payment for Documented Out-of-Pocket Losses also may be adjusted depending on how many Approved Claims are submitted.

9.    *What are Documented Out-of-Pocket Losses?*

Documented Out-of-Pocket Losses: Documented Out-of-Pocket Losses means the unreimbursed costs or expenditures incurred by a Settlement Class Member between September 20, 2023 and the Claims Deadline, as result of the Data Incident. Settlement Class Members may seek reimbursement for up to two thousand and five hundred dollars ($2,500). Examples of Documented Out-of-Pocket Losses may include, but are not limited to, unreimbursed costs, expenses, or charges incurred addressing or remedying identity theft, fraud, or misuse of Personal Information and/or other issues reasonably traceable to the Data Incident.

To make a valid claim for Documented Out-of-Pocket Losses, you must provide documentation of these unreimbursed losses.  The payment for Documented Out-of-Pocket Losses may be reduced pro rata depending on the number of Approved Claims that are submitted.

10.    *What is the Pro Rata Cash Payment?*

In addition, Settlement Class Members may also claim a Pro Rata Cash Payment, by submitting a timely and valid Claim Form regardless of whether he or she experienced any unauthorized charges or identifiable losses related to the Data Incident. Settlement Class Members seeking a Pro Rata Cash Payment must provide the information required on the Claim Form. The pro rata cash payment is subject to upward or downward adjustment as described below in Question 11.

4

Eligibility for any award and the validity of your claim, including the pro rata cash payment, will be determined by the Settlement Administrator as outlined in Question 15.

*11. When and how will the amount of settlement payments be adjusted?*

The amount of the pro rata cash payments will be adjusted upward or downward from the amounts listed in Question 10 depending on how many Settlement Class Members submit Approved Claims.

If the total dollar value of all Approved Claims is less than the amount of money available in the Settlement Fund for payment of those claims, the amounts for pro rata cash payments will be adjusted upward proportionally among all Approved Claims for those awards, until the amounts remaining in the Settlement Fund are exhausted (or as nearly as possible).

If the total dollar value of all Approved Claims is more than the amount of money available in the Settlement Fund for payment of those Approved Claims, the amount of the payments for pro rata cash payments, the duration of Credit Monitoring, and the amount of payment for Documented Out-of-Pocket Losses will be adjusted downward proportionally among all Settlement Class Members who submitted Approved Claims.

12. *What happens after all claims are processed and there are funds remaining?*

If there are any funds remaining after all Approved Claims are processed and the time to cash any payment checks has passed, those funds shall be distributed as directed by the Court, including potential distribution to a charitable organization. No remaining funds will be returned to Defendant.

## **Your Options as a Settlement Class Member**

*13. If I am a Settlement Class Member, what options do I have?*

If you are a Settlement Class Member, you do not have to do anything to remain in the settlement. In order to receive payment or Credit Monitoring from the settlement, you must submit a valid Claim Form.

If you do not want to give up your right to sue Defendant or the other Released Parties about the Data Incident or the issues raised in this Litigation, you must exclude yourself (or "opt out") from the Settlement Class. See Question 16 below for instructions on how to exclude yourself.

If you wish to object to the settlement, you must remain a Settlement Class Member (i.e., you may not also exclude yourself from the Settlement Class by opting out) and submit a written objection. See Question 19 below for instructions on how to submit an objection.

*14. What happens if I do nothing?*

If you do nothing, you will get no benefits from this settlement. Unless you exclude yourself, after the settlement is granted final approval and the judgment becomes final, you will be bound by the

judgment and you will never be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendant or the other Released Parties related to the claims released by the Settlement Agreement.

15.    *Who decides my settlement claim and how do they do it?*

The Settlement Administrator will decide whether a claim form is complete and valid and includes all required documentation. The Settlement Administrator may require additional information from any claimant. Failure to timely provide all required information will invalidate a claim and it will not be paid.

16.    *How do I exclude myself from the settlement?*

To opt out of the settlement you must make a signed, written request that includes (i) the name of the proceeding; (ii) your full name, current address and personal signature; and (iii) the words "Request for Exclusion" or a comparable unequivocal statement that you do not wish to participate in the settlement. You must mail your request to this address:

<div align="center">

Kroll Settlement Administration LLC
**[INSERT REQUEST FOR EXCLUSION MAILING ADDRESS]**

</div>

Your request must be submitted online or postmarked by **[OPT-OUT DEADLINE]**.

17.    *If I exclude myself, can I receive any payment from this settlement?*

No. If you exclude yourself, you will not be entitled to any award under the settlement. However, you will also not be bound by any judgment in this Litigation.

18.    *If I do not exclude myself, can I sue Defendant for the Data Incident later?*

No. Unless you exclude yourself, you give up any right to sue Defendant and the other Released Parties for the claims that this settlement resolves, known as the Released Claims. You must exclude yourself from the Settlement Class to start your own lawsuit or to be part of any different lawsuit relating to the claims in this case. If you exclude yourself, do not submit a claim form requesting a payment.

19.    *How do I object to the settlement?*

All Settlement Class Members who do not opt-out from the Settlement Class have the right to object to the settlement or any part of it. You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the Litigation will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing and it and any supporting papers must be mailed to this address:

<div align="center">6</div>

Kroll Settlement Administration LLC
**[INSERT OBJECTION MAILING ADDRESS]**

Your objection must be filed or postmarked no later than the objection deadline, [**INSERT OBJECTION DEADLINE**]. Class Counsel will then file your objection with the Court.

To be considered by the Court, your objection must list the name of the lawsuit pending in the United States District Court for the Northern District of Texas: *Mooney et al. v. Ashford Inc.,* Civil Litigation No. 3:24-cv-00279-K, and include all of the following information: (i) your full name, address, telephone number, and email address (if any), (ii) information identifying you as a Settlement Class Member, including proof that you are a member of the Settlement Class (such as the Notice you received from Ashford or the Notice of this settlement), (iii) a statement as to whether your objection applies only to yourself, to a specific subset of the Settlement Class, or to the entire Class, (iv) a clear and detailed written statement of the specific legal and factual bases for each and every objection, accompanied by any legal support for the objection you believe is applicable, (v) the identity of any counsel representing you, (vi) a statement of whether you intend to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying that counsel, (vii) a list of all persons who will be called to testify at the Final Approval Hearing in support of your objections and any documents to be presented or considered, and (viii) your signature and the signature of your duly authorized attorney or other duly authorized representative (if any).

If you submit a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney.

## Court Approval of the Settlement

*20.    How, when, and where will the Court decide whether to approve the settlement?*

The Court will hold a Final Approval Hearing to decide whether to approve the settlement. That hearing is scheduled for **_____, 202__ at _____ a.m./p.m.** at the United States District Court for the Northern District of Texas, before Judge Ed Kinkeade, 1100 Commerce Street, Courtroom 1627, Dallas, Texas 75242. The Final Approval Hearing may be held via remote means. Please visit the Court's website at https://www.txnd.uscourts.gov/ for current information regarding courthouse access and court hearings. At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are timely objections, the Court will consider them and will listen to people who have properly requested to speak at the hearing. The Court may also consider Plaintiffs' Counsel's Fees and Expenses request, and the request for Service Awards for the Class Representatives. After the hearing, the Court will decide whether to approve the settlement.

It is possible the Court could reschedule the Final Approval Hearing to a different date or time, or set the Final Approval Hearing to occur remotely without notice, so it is a good idea before the hearing to check www._____.com or access the Court docket in this case, for a fee,

through the Court's Public Access System at https://www.txnd.uscourts.gov/ to confirm the schedule if you wish to attend.

21.    *Do I have to attend the Final Approval Hearing?*

No. You do not need to attend the Final Approval Hearing unless you object to the settlement and wish to appear in person. It is not necessary to appear in person in order to make an objection; the Court will consider any written objections properly submitted according to the instructions in Question 19. You or your own lawyer are welcome to attend the hearing at your expense, but are not required to do so.

22.    *What happens if the Court approves the settlement?*

If the Court approves the settlement and no appeal is taken, the Settlement Administrator will pay the Plaintiffs' Counsel's Fees and Expenses and any Service Awards from the Settlement Fund. Then, the Settlement Administrator will send settlement payments to Settlement Class Members who submitted Approved Claims. If any appeal is taken, it is possible the settlement could be disapproved on appeal.

23.    *What happens if the Court does not approve the settlement?*

If the Court does not approve the settlement, there will be no settlement payments to Settlement Class Members, Class Counsel or the Class Representatives, and the case will proceed as if no settlement had been attempted.

### **Lawyers for the Settlement Class and Defendant**

24.    *Who represents the Settlement Class?*

The Court has appointed the following Class Counsel to represent the Settlement Class in this Lawsuit:

| |
|---|
| David K. Lietz, Esq.<br>**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN**<br>5335 Wisconsin Avenue NW, Suite 440<br>Washington, DC 20015<br>(866) 252-0878 |
| Joe Kendall, Esq.<br>**KENDALL LAW GROUP, PLLC**<br>3811 Turtle Creek Blvd., Suite 825<br>Dallas, Texas 75219<br>(214) 744-3000 |

8

APP. 057

<div style="border:1px solid black">

Kevin Laukaitis
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon Suite 205, #10518
San Juan, PR 00907
Phone: (215) 789-4462

</div>

Settlement Class Members will not be charged for the services of Class Counsel. Class Counsel will be paid out of the Settlement Fund, subject to Court approval. However, you may hire your own attorney at your own cost to advise you in this matter or represent you in making an objection or appearing at the Final Approval Hearing.

25.   *How will the lawyers for the Settlement Class be paid?*

Class Counsel will request the Court's approval of an award for Plaintiffs' Counsel's fees and expenses up to one-third of the Settlement Fund, or one hundred fifty-six thousand six hundred and sixty-six dollars and sixty-seven cents ($156,666.67), plus reasonable costs and expenses. Class Counsel will also request approval of Service Awards of two thousand five hundred dollars ($2,500) for each Class Representatives, which shall also be paid from the Settlement Fund.

26.   *Who represents Defendant in the Lawsuit?*

Defendant is represented by the following counsel:

| **Defendant's Counsel** |
|:---:|
| Stephen C. Rasch |
| J. Meghan McCaig |
| **HOLLAND & KNIGHT LLP** |
| One Arts Plaza |
| 1722 Routh Street, Suite 1500 |
| Dallas, Texas  75201 |
| Telephone: (214) 969-1700 |

## **For Further Information**

27.   *What if I want further information or have questions?*

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the Settlement Agreement and Release available at www._____.com, by contacting the Settlement Administrator at the following toll-free phone number (1-XXX-XXX-XXXX), by accessing the Court docket in this case, for a fee, through the Court's Public Access system at https://www.txnd.uscourts.gov/ or by visiting the Clerk of the Court, Earle Cabell Federal Building, 1100 Commerce Street, Room 1452 Dallas, TX 75242 between 8:30 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays.

9

Kroll will act as the Settlement Administrator for the settlement. You can contact the Settlement Administrator at:

    Kroll settlement Administration LLC
    **[INSERT CONTACT INFO FOR SETTLEMENT ADMINISTRATOR]**

**Please do not contact the Court or Defendant's Counsel.**

# EXHIBIT D

LEGAL NOTICE

**If you received direct notice of a September 2023 Data Incident, you may be entitled to benefits from a class action settlement.**

*A federal district court authorized this Notice.*

**(8XX) XXX-XXXX**
**www.URL.com**

Ashford Inc. Settlement Administrator
P.O. Box XXXX
XXXXX

**«Barcode»**

Postal Service: Please do not mark barcode

«ClassMemberID»
«First1» «Last1»
«co»
«Addr1» «Addr2»
«City», «St» «Zip»
«Country»



First-Class
Mail
US Postage
Paid
Permit #____

APP. 061

A $470,000 settlement has been proposed in a putative class action lawsuit against Ashford Inc. ("Defendant" or "Ashford") relating to the unauthorized access to Ashford's data environment which occurred on or about September 20, 2023 ("Data Incident"). Defendant denies all allegations of wrongdoing or liability.

**Who is included?** Ashford's records indicate that you are included in the Settlement Class. The Settlement Class includes all individuals who received direct notice that their Personal Information may have been implicated in the Data Incident ("Settlement Class").

**What does the settlement provide?** The settlement provides Settlement Class Members with the right to claim (1) compensation for Documented Out-of-Pocket Losses (up to $2,500); (2) a Pro Rata Cash Payment; and (3) up to three years of single-bureau credit monitoring.

**How do I get benefits?** You must complete and submit a Claim Form by **DATE**. Claim Forms are available and may be filed online at **www.URL.com**. Claim Forms also may be printed from the Settlement Website or requested by calling the Settlement Administrator and submitted by mail postmarked by **DATE**.

**What are my other options?** If you do not want to be legally bound by the settlement, you must exclude yourself by **DATE**. Unless you exclude yourself from the settlement, you will not be able to sue Ashford or any other Released Parties for any claim released by the Settlement Agreement. If you do not exclude yourself from the settlement, you may object and notify the Court that you or your lawyer intend to appear at the Court's Final Approval Hearing. Objections must be filed by **DATE**.

**The Court's Final Approval Hearing.** The Court will hold a Final Approval Hearing in this case (*Mooney et al. v. Ashford Inc.*, Civil Action No. 3:24-cv-00279-K) on _____, 202_ at _____ a.m./p.m. at the United States District Court for the Northern District of Texas, before Judge Ed Kinkeade, 1100 Commerce Street, Courtroom 1627, Dallas, Texas 75242, or by remote means. At this hearing, the Court will decide whether to approve: (1) the settlement; (2) Class Counsel's request for up to $156,666.67 in attorneys' fees, plus reimbursement of costs; and (3) $2,500 Service Awards to each Class Representative. You may appear at the hearing, but you do not have to. You also may hire your own attorney, at your own expense, to appear or speak for you at the hearing.

*This is only a summary of the settlement. For more information, visit URL.*

2

APP. 062

# EXHIBIT E

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SEAN MOONEY AND JONATHAN BONNETTE, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>ASHFORD, INC.<br><br>     Defendant. | Case No. 3:24-cv-00279-K<br><br>(Consolidated with 3:24-cv-00408-E) |

## [PROPOSED] PRELIMINARY APPROVAL ORDER

Before this Court is the Unopposed Motion for Preliminary Approval of Class Litigation Settlement (the "Motion") filed by Plaintiffs Sean Mooney and Jonathan Bonnette ("Plaintiffs"). The Court has reviewed the Motion and Settlement Agreement between Plaintiffs and Defendant Ashford Inc. ("Defendant"). After reviewing Plaintiffs' unopposed request for preliminary approval, this Court grants the Motion and preliminarily concludes that the proposed settlement is fair, reasonable, and adequate.

IT IS HEREBY ORDERED THAT:

1.    The Settlement Agreement,[1] including the proposed notice plan and forms of notice to the Settlement Class, the appointment of Plaintiffs Sean Mooney and Jonathan Bonnette as the Class Representatives, the appointment of Joe Kendall of the law firm Kendall Law Group, PLLC,

---

[1] All capitalized terms used in this Order shall have the same meanings as set for in the Settlement Agreement.

David K. Lietz of the law firm Milberg Coleman Bryson Phillips Grossman, LLC, and Kevin Laukaitis of the law firm Laukaitis Law LLC as Class Counsel for the Settlement Class, the approval of Kroll as the Settlement Administrator, the various forms of class relief provided under the terms of the settlement and the proposed method of distribution of settlement benefits, are fair, reasonable, and adequate, subject to further consideration at the Final Approval Hearing described below.

2.    The Court does hereby preliminarily and conditionally approve and certify, for settlement purposes, the following Settlement Class:

**All Persons residing in the United States who received notice from Ashford that their information was involved in the Data Incident.[2]**

3.    Based on the information provided, for the purposes of settlement only: the Settlement Class is ascertainable; it consists of roughly 46,906 Settlement Class Members satisfying numerosity; there are common questions of law and fact including whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information potentially implicated in the Data Incident, satisfying commonality; the proposed Class Representatives' claims are typical in that they are members of the Settlement Class and allege they have been damaged by the same conduct as the other members of the Settlement Class; the proposed Class Representatives and Class Counsel fully, fairly, and adequately protect the interests of the Settlement Class; questions of law and fact common to members of the Settlement Class predominate over questions affecting only individual members for settlement purposes; and a class action for settlement purposes is superior to other available methods for the fair and efficient adjudication of this Litigation.

---

[2] The "Data Incident" refers to the unauthorized access to Ashford's data environment which occurred on or about September 20, 2023.

4.      The Court appoints Plaintiffs Sean Mooney and Jonathan Bonnette as the Class Representatives.

5.      The Court appoints Joe Kendall of the law firm Kendall Law Group, PLLC, David K. Lietz of the law firm Milberg Coleman Bryson Phillips Grossman, LLC, and Kevin Laukaitis of the law firm Laukaitis Law LLC as Class Counsel for the Settlement Class.

6.      The Court appoints Kroll as the Settlement Administrator.

7.      A   Final   Approval   Hearing   shall   be   held   before   the   Court on____[date]_____, 2024 at ___[time]_____, or by remote means, for the following purposes:

    a)      To determine whether the proposed settlement is fair, reasonable, and adequate to the Settlement Class and should be approved by the Court;

    b)      To determine whether to grant Final Approval, as defined in the Settlement Agreement;

    c)      To determine whether the notice plan conducted was appropriate;

    d)      To determine whether the claims process under the settlement is fair, reasonable and adequate and should be approved by the Court;

    e)      To determine whether the requested Class Representative Service Awards of $2,500.00 each, and Class Counsel's attorneys' fees, of up to 1/3 of the Settlement Fund ($156,666.67) plus reasonable out-of-pocket litigation expenses should be approved by the Court;

    f)      To determine whether the settlement benefits are fair, reasonable, and adequate; and,

    g)      To rule upon such other matters as the Court may deem appropriate.

8.      The Court approves, as to the form and content, the notices (including the Postcard Notice). Furthermore, the Court approves the implementation of the Settlement Website and the proposed methods of mailing or distributing the notices substantially in the form as presented in the exhibits to the Unopposed Motion for Preliminary Approval of Class Litigation Settlement, and finds that such notice plan meets the requirements of Fed. R. Civ. P. 23 and due process, and is the best notice practicable under the circumstances, and shall constitute due and efficient notice to all persons or entities entitled to notice.

9.      The Court preliminarily approves the following Settlement Timeline for the purposes of conducting the notice plan, Settlement Administration, claims processing, and other execution of the proposed settlement:

### SETTLEMENT TIMELINE

| **From Order Granting Preliminary Approval** | |
|---|---|
| Defendant provides Class Member Information to the Settlement Administrator | +10 days after preliminary approval order |
| Long Form and Postcard Notices Posted on the Settlement Website | +30 days after preliminary approval order |
| Class Notice Date | +30 days after preliminary approval order |
| Plaintiffs' Counsel's motion for Fees and Expenses and Service Awards | +75 days after preliminary approval order (+45 days after Class Notice Date) |
| Objection Deadline | +60 days after Class Notice Date |
| Request for Exclusion Deadline | +60 days after Class Notice Date |
| Claims Deadline | +90 days after Class Notice Date |
| | |
| **Final Approval Hearing** | , 2024 |
| Motion for Final Approval | + 30 days after Claims Deadline |
| | |
| **From Order Granting Final Approval** | |
| Effective Date | +31 days, assuming no appeal has been taken. See definition of Final in the Agreement. |
| Payment of Plaintiffs' Counsel's Fees and Expenses and Service Awards | +14 days after Effective Date |
| Payment of Approved Claims to Settlement Class | +60 days of Effective Date |

4

| | |
|---|---|
| Members | |
| Settlement Website Deactivation | +180 days after Effective Date |

10.     In order to be a timely claim under the settlement, a Claim Form must be either postmarked or received by the Settlement Administrator no later than 90 days after the Class Notice Date. Class Counsel and the Settlement Administrator will ensure that all specific dates and deadlines are added to the Postcard Notice and posted on the Settlement Website after this Court enters this Order in accordance with the timeline being keyed on the grant of this Order.

11.     Additionally, all requests to opt out or object to the proposed settlement must be postmarked by or received by the Settlement Administrator no later than 60 days after the Class Notice Date. Any request for exclusion from the settlement should, to the extent possible, contain words or phrases such as "opt-out," "exclusion," or words or phrases to that effect indicating an intent not to participate in the settlement or be bound by this Agreement to Kroll. Requests for Exclusion shall not be rejected simply because they were inadvertently sent to the Court or Class Counsel so long as they are timely postmarked or received by the Court, Kroll, or Class Counsel. Settlement Class Members who seek to exclude themselves shall receive no benefit or compensation under this Agreement.

12.     Settlement Class Members may submit an objection to the proposed settlement under Federal Rule of Civil Procedure 23(e)(5). For an objection to be valid, it must be postmarked by or received by the Settlement Administrator no later than 60 days after the Class Notice Date and include each and all of the following:

(i)      the objector's full name, current address, current telephone number, and be personally signed,

(ii)      (ii) the case name and case number, *Mooney et al. v. Ashford Inc.*, Civil Litigation No. 3:24-cv-00279-K, pending in the United States District Court for the Northern District of Texas,

(iii)      documentation sufficient to establish membership in the Settlement Class, such as a copy of the Postcard Notice he or she received,

(iv)      a statement of the position(s) the objector wishes to assert, including the factual and legal grounds for the position(s),

(v)      (v) copies of any other documents that the objector wishes to submit in support of his/her position,

(vi)      whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and

(vii)      (v) whether the objecting Settlement Class Member is represented by counsel and, if so, the name, address, and telephone number of his/her counsel.

Any objection failing to include the requirements expressed above will be deemed to be invalid. Furthermore, any Settlement Class Member objecting to the settlement agrees to submit to any discovery related to the objection.

13.      All Settlement Class Members shall be bound by all determinations and judgments in this Litigation concerning the settlement, including, but not limited to, the releases, including the Released Claims, provided for in the Settlement Agreement, whether favorable or unfavorable, except those who timely and validly request exclusion from the Settlement Class. The persons and entities who timely and validly request exclusion from the Settlement Class will be excluded from the Settlement Class and shall not have rights under the Settlement Agreement, shall not be entitled to submit Claim Forms, and shall not be bound by the Settlement Agreement or any Final Approval

6

order as to Ashford Inc. or any of the Released Parties in this Litigation.

14.     Pending final determination of whether the Settlement Agreement should be approved, Plaintiffs and the Settlement Class are barred and enjoined from commencing or prosecuting any claims asserting any of the Released Claims against Ashford Inc. or the other Released Parties.

15.     In the event that the Settlement Agreement is terminated pursuant to the terms of the Settlement Agreement: (a) the Settlement Agreement and this Order shall become void, shall have no further force or effect, and shall not be used in the Litigation or any other proceedings for any purpose other than as may be necessary to enforce the terms of the Settlement Agreement that survive termination; (b) this matter will revert to the status that existed before execution of the Settlement Agreement; and (c) no term or draft of the Settlement Agreement or any part of the Parties' settlement discussions, negotiations or documentation (including any briefs filed in support of preliminary or final approval of the settlement) shall (i) be admissible into evidence for any purpose in this Litigation or in any other action or proceeding other than as may be necessary to enforce the terms of the Settlement Agreement that survive termination, (ii) be deemed an admission or concession by any Party regarding the validity of any of the Released Claims or the propriety of certifying any class against Ashford, or (iii) be deemed an admission or concession by any Party regarding the truth or falsity of any facts alleged in the Litigation or the availability or lack of availability of any defense to the Released Claims.

16.     The Court reserves the right to adjourn the date of the Final Approval Hearing without further notice to the potential Settlement Class Members and retains jurisdiction to consider all further requests or matters arising out of or connected with the proposed settlement. The Court may approve the settlement, with such modification as may be agreed to by the Parties

7

or as ordered by the Court, without further notice to the Settlement Class.

IT IS SO ORDERED.

_____

United States District Judge

# **TAB 2**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| SEAN MOONEY AND JONATHAN BONNETTE, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>   v.<br><br>ASHFORD, INC.,<br><br>         Defendant. | Case No. 3:24-cv-00279-K |

**JOINT DECLARATION OF COUNSEL IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

We, **Joe Kendall, David Lietz, and Kevin Laukaitis**, declare under penalty of perjury as follows:

1.      We and our law firms are proposed Class Counsel for Plaintiffs and the Settlement Class ("Class Counsel") in the above referenced action (the "Action"). We submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Brief in Support, filed contemporaneously herewith.

2.      Sean Mooney and Jonathan Bonnette ("Plaintiffs"), on behalf themselves and all others similarly situated as members of the putative Settlement Class, and Defendant Ashford, Inc. ("Ashford" or "Defendant") (collectively, the "Parties") have reached an agreement to settle this

Action pursuant to the terms of the Settlement Agreement, attached to the Memorandum in Support

of the Unopposed Motion for Preliminary Approval within the Appendix as **Exhibit 2**.[1]

3.     This case arises from a Data Incident whereby unauthorized access to Ashford's

data environment occurred in or about September 2023.

4.     This suit was brought on February 2, 2024, in the United States District Court for

the Northern District of Texas by Plaintiff Sean Mooney in the case styled *Mooney v. Ashford Inc.,*

Complaint, No. 3:24-cv-00279-K (N.D. Tex. Feb. 2, 2024).

5.     On that same day, Plaintiff Jonathan Bonnette filed suit against Ashford and a

subsidiary, Remington Holdings, L.P., in state court in Dallas County in the case styled *Bonnette*

*v. Ashford Inc.,* Petition, No. DC-24-01679 (68th Judicial District Court, Dallas County, Texas

Feb. 2, 2024).

6.     Ultimately, Bonnette non-suited the state lawsuit, and Class Counsel filed a

Consolidated Class Action Complaint, ECF. No. 21 in No. 3:24-cv-00279-K, which combined the

two Representative Plaintiffs' claims in the federal lawsuit.  Representative Plaintiffs asserted the

following counts in the Consolidated Class Action Complaint:

- Count One – Negligence;

- Count Two – Negligence Per Se;

- Count Three – Breach of Implied Contract; and

- Count Four – Unjust Enrichment.

The Consolidated Class Action Complaint also sought equitable and injunctive relief.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

7.      On May 17, 2024, Ashford filed its Motion to Dismiss. [ECF No. 22]. The motion has not been resolved by the Court.

8.      On September 20, 2024, the Court entered an order staying and administratively closing the case pending settlement discussions.

9.      Throughout their settlement discussions, the Parties engaged in a thorough evaluation and discussion of the relevant facts and law, and the Parties carefully considered the risk and uncertainties of continued litigation and all other factors bearing on the merits of settlement. As a result, the Parties reached a settlement in principle and, in the following weeks, negotiated a final mutual agreement on all the necessary documentation and material terms.

10.     The proposed Settlement was agreed to following adversarial arm's-length negotiations, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the inherent risks in the Litigation, and with the active involvement of the Parties. After the settlement was reached, the Parties worked diligently to: (i) finalize the settlement documentation, including the Settlement Agreement and accompanying exhibits, and Plaintiffs' Unopposed Motion for Preliminary Approval with this declaration in support, and; (ii) solicit bids and mutually agree on a Settlement Administrator.

11.     The terms of the Settlement reached are memorialized in the Settlement Agreement.

12.     The Parties advised the Court of this proposed settlement and sought an extension of the stay. [ECF No. 31]. The Court granted that extension and ordered the Parties to submit Plaintiffs' motion for preliminary approval no later than January 31, 2025. [ECF No. 32].

13.     The agreement provides for a non-reversionary common fund of $470,000.00, from which Class Members can claim (1) a *pro rata* cash payment; (2) reimbursement of up to $2,500.00

for Document Out-of-Pocket Losses, and three (3) years of single-bureau credit monitoring with up to $1 million in fraud insurance.

14.    Data breach settlements are often evaluated on a "per person" recovery basis, and the $10 per person recovered here ($470,000.00 divided by 46,906 Settlement Class Members) meets or exceeds many other finally approved data breach settlements.

15.    The release in this case is tailored to the claims that have been pleaded or could have been pleaded in this case, arising out of the events and circumstances of the Data Incident. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release claims against Defendant and Released Parties related to the Data Incident and/or the data security practices in place at the time of the Data Incident.

16.    The Notice Program contemplated by this Settlement meets all due process requirements. The Notices themselves are clear and straightforward. They define the Settlement Class; clearly describe the options available to Settlement Class Members and the deadlines for taking action; describe the essential terms of the Settlement; disclose the requested service award for the Class Representatives as well as the amount that proposed Settlement Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of Class Counsel.

17.    The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement.

18.     The timing of the Claims Process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to object. Settlement Class Members will have until ninety (90) days after the commencement of Notice to complete and submit their Claim Form to the Settlement Administrator, either by mail or online. The Claim Form, attached to the Settlement Agreement at Exhibit A, is written in plain language to facilitate Settlement Class Members' ease in completing it.

19.     Settlement Class Members will have up to and including sixty (60) days following commencement of the Notice Program to opt-out of or object to the Settlement. Similar to the timing of the Claims Process, the timing with regard to objections and opt-outs is structured to give Settlement Class Members sufficient time to access and review the Settlement documents.

20.     Class Counsel have adequately represented the Class by fully investigating the facts and legal claims; preparing the complaints; conducting informal discovery, and, negotiating and reaching a Settlement at arm's length, in good faith, and without collusion.

21.     By the time the Settlement in principle was reached, Plaintiffs and Class Counsel fully understood the claims, defenses, and were well informed of the strengths and weaknesses of the case to competently assess the risks of continued litigation.

22.     Plaintiffs and Class Counsel did not discuss the award of Attorneys' Fees, Expenses, or Service Award Payments with Defendant until after the substantive terms of the Settlement had been agreed upon.

23.     The Settlement Agreement calls for a reasonable service payments to be sought for Plaintiffs in the amount of $2,500 per Plaintiff. S.A. ¶ IV(4)(b)(ii). The Service Payments are meant to compensate Plaintiffs for their efforts on behalf of the Settlement Class, including

maintaining contact with counsel, assisting in the investigation of the case, remaining available for consultation throughout the negotiations, and answering counsel's many questions.

24.     After agreeing to the terms of the Settlement on behalf of the Settlement Class, counsel for Plaintiffs negotiated their fees in the amount of $156,666.67, plus reimbursement of out-of-pocket case expenses, subject to Court approval and to be paid from the Settlement Fund. S.A. ¶ IV(4)(b)(i).

25.     Class Counsel will submit a separate Motion seeking Attorneys' Fees, Costs, and Plaintiffs' Service Awards prior to filing the Motion for Final Approval of Class Action Settlement, and prior to Settlement Class Members' deadline to exclude themselves from or object to the Settlement Agreement.

26.     After the Settlement was reached, the Parties undertook a competitive bidding process to achieve an excellent Settlement Administrator for the Class—Kroll Settlement Administration LLC ("Kroll"). Kroll is a well-known firm with a history of successfully administering many class action settlements, including other data breach settlements. The Parties jointly selected Kroll after considering bids from multiple administration firms and believe that Kroll will be able to meet the obligations imposed on the Claims Administrator under the Settlement Agreement for a reasonable cost.

27.     It is Class Counsel's opinion that the Settlement is fair, reasonable, and adequate considering the significant benefits to the Settlement Class as well as the risks and delays attendant to further protracted litigation. This case will take years to litigate with briefing and arguing of dispositive motions; engaging in voluminous discovery; and months of continued settlement negotiations. This view is informed by Class Counsel's decades of work litigating complex actions, including data breach class actions. Proposed Class Counsel has extensive experience in

successfully litigating data breach class actions. *See* Exhibits A, B, C to this Joint Declaration (counsel and law firm resumes for the proposed Class Counsel).  Counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Settlement Class.

28.     Proposed Class Counsel too have vigorously pursued the interests of the Settlement Class in securing a Settlement that brings immediate benefits to Settlement Class Members while avoiding the risks of continued litigation. In doing so, they leaned on their extensive experience in data breach litigation, their detailed investigation of this particular matter, and informal discovery exchanged during the course of their negotiations.

29.     The Plaintiffs have no conflicts with the Settlement Class Members and have demonstrated their adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Litigation.  These Plaintiffs, like all Settlement Class Members, allege that their data may have been compromised in the same Data Incident, and thus have common interests with the Settlement Class. Moreover, they have ably represented the Settlement Class, maintaining contact with counsel, assisting in the investigation of the case, reviewing the material terms of the Settlement Agreement, remaining available for consultation throughout the settlement negotiations, and answering counsel's many questions.

30.     Class Counsel represents that there are no agreements related to the settlement other than those reflected in the Settlement Agreement itself and an agreement with Kroll to perform notice and settlement administration services if this Motion is granted by the Court.

31.     The Settlement Class Representatives have demonstrated their adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) actively monitoring the Litigation.

32.     It is our opinion that the proposed class action settlement is fair, reasonable, and adequate and is an outstanding result for the Settlement Class Members.

We declare under penalty of perjury that the foregoing is true and correct.


Dated: January 31, 2025                     Respectfully submitted,

By:     /s/ *Joe Kendall*
        Joe Kendall
        Texas Bar No. 11260700
        **KENDALL LAW GROUP, PLLC**
        3811 Turtle Creek Blvd., Suite 825
        Dallas, Texas 75219
        214-744-3000
        214-744-3015 (Facsimile)
        jkendall@kendalllawgroup.com

By:     /s/ *David K. Lietz*
        David K.  Lietz (admitted *pro hac vice*)
        **MILBERG COLEMAN BRYSON
        PHILLIPS GROSSMAN PLLC**
        5335 Wisconsin Avenue NW
        Washington, D.C. 20015-2052
        Telephone: (866) 252-0878
        Facsimile: (202) 686-2877
        dlietz@milberg.com

BY:     /s/ *Kevin Laukaitis*
        Kevin Laukaitis (admitted *pro hac vice*)
        **LAUKAITIS LAW LLC**
        954 Avenida Ponce De Leon
        Suite 205, #10518

San Juan, PR 00907
T: (215) 789-4492
klaukaitis@laukaitislaw.com

*Counsel for Plaintiffs and the Putative Class*

# EXHIBIT A



**FIRM RESUME**

Kendall Law Group was founded by former federal judge Joe Kendall.  It is a boutique trial law firm exclusively representing plaintiffs.  Led by Judge Kendall, the firm brings value-added assistance to their clients in complex class action, securities, and business litigation matters.

Since 2002, in class action cases, Joe Kendall has participated in obtaining over 1 billion dollars for clients.  He has served as lead, co-lead, or local counsel in numerous merger & acquisition, derivative, securities fraud, consumer and other class action cases in both state and federal courts, including: *Gazda v. Ryan et al.*, Case No. 3:04-cv-02113-K (N.D. Tex.); *Sunset Management LLC v. American Realty Investors, Inc et al.,* Case No. 3:04-cv-02162-K (N.D. Tex.); *NECA-IBEW Pension Fund v. The Neiman Marcus Group Inc et al.,* Case No. 3:05-cv-00898-L (N.D. Tex.); *Alaska U.F.C.W Pension Trust v. Kleisner et al.,* Case No. 3:05-cv-01323-B (N.D. Tex.); *Hulliung v. Bolen et al,* Case No. 3:06-cv-01083-N (N.D. Tex.); *Patrick Wheeler v. Frozen Food Express Industries, Inc et al.*, Case No. 3:13-cv-02823-P (N.D. Tex.); *Linda K. Blankman v. Bradley et al.,* Case No. 3:15-cv-00339-L (N.D. Tex.); *Bazini et al v. Bradley et al.*, Case No. 3:15-cv-00389-L (N.D. Tex.); *Berlin v. Regency Energy Partners LP et al.*, Case No. 3:15-cv-00519-L (N.D. Tex.); *Budde et al v. Global Power Equipment Group Inc et al.*, Case No. 3:15-cv-01679-M (N.D. Tex.); *Benouis v. Match Group Inc et al.,* Case No. 3:19-cv-02356-S (N.D. Tex.); *Harrison v. XTO Energy Inc et al.*, Case No. 4:09-cv-00768-Y (N.D. Tex.); *Atayi v. AZZ, Inc. et al.*, Case No. 4:19-cv-00928-A (N.D. Tex.);  *Erica P John Fund Inc et al. v. Halliburton Company et al,* Case No. 3:02-cv-01152-M (N.D. Tex.); *Schwartz, et al v. TXU Corp.,* Case No. 3:02-cv-02243-K (N.D. Tex.); *Rogers v. TXU Corp, et al.,* Case No. 3:02-cv-02586-K (N.D. Tex.); *Jorgensen, et al v. TXU Corp, et al.,* Case No. 3:02-cv-

1

02600-K (N.D. Tex.); *Taubenfeld v. Hotels.com, et al.,* Case No. 3:03-cv-00069-N (N.D. Tex.); *In re Michaels Stores, Inc. Securities Litigation*, Case No. 3:03-cv-00246-M (N.D. Tex.); *In re Carreker Corporation Securities Litigation,* Case No. 3:03-cv-00250-B (N.D. Tex.); *Sims v. Michaels Stores, Inc, et al.*, Case No. 3:03-cv-00278-M (N.D. Tex.); *Green v. Hotels.com, et al.*, Case No. 3:03-cv-00279-N (N.D. Tex.); *McKnight, et al v. TXU Corp., et al.,* Case No. 3:03-cv-00289-K (N.D. Tex.); *JIS Trading Group v. TXU Corp., et al.*, Case No. 3:03-cv-00290-K (N.D. Tex.); *Steele, et al v. Hotels.com, et al.,* Case No. 3:03-cv-00323-N (N.D. Tex.); *In re Blockbuster Inc. Securities Litigation,* Case No. 3:03-cv-00398-M (N.D. Tex.); *Massachusetts State Carpenters Pension Fund v. Fleming Companies Inc et al.,* Case No. 3:03-cv-00460-M (N.D. Tex.); *Heller v. Michaels Stores, Inc et al.*, Case No. 3:03-cv-00499-M (N.D. Tex.); *Futransky v. Michael Stores Inc et al.*, Case No. 3:03-cv-00511-M (N.D. Tex.); *A*IG *Annuity Insurance Company et al v. Ebbers et al.,* Case No. 3:03-cv-01566-L (N.D. Tex.); *Robbins v. Brick et al.*, Case No. 3:03-cv-01687-M (N.D. Tex.); *Imperial County v. Brick et al.*, Case No. 3:03-cv-01688-M (N.D. Tex.); *Ryan v. Flowserve Corporation et al.,* Case No. 3:03-cv-01769-B (N.D. Tex.); *TDH Partners LLP v. Ryland Group Inc et al.,* Case No. 3:04-cv-00073-B (N.D. Tex.); *Massachusetts Laborers Annuity Fund et al v. Odyssey Healthcare, Inc et al.,* Case No. 3:04- cv-00844-N(N.D. Tex.); *Caldarola v. Odyssey Healthcare, Inc et al.,* Case No. 3:04- cv-00988-N (N.D. Tex.); *In re UICI Securities Litigation,* Case No. 3:04-cv-01149-P (N.D. Tex.); *Fener v. Belo Corporation et al,* Case No. 3:04-cv-01836-D (N.D. Tex.); *In re SourceCorp Inc. Securities Litigation,* Case No. 3:04-cv-02351-N (N.D. Tex.); *Lentz v. Citadel Security Software Inc et al.,* Case No. 3:05-cv-00100-D (N.D. Tex.); *Holland v. Citadel Security Software Inc et al.*, Case No. 3:05-cv-00184-D (N.D. Tex.); *Pipefitters Local No. 636 Defined Benefit Plan v. Ryland Group, Inc. et al.,* Case No. 3:06-cv-00022-B (N.D. Tex.); *Laborers National Pension Fund v. AOL Time Warner Inc et al.,* Case No. 3:06-cv-00220-K (N.D.

Tex.); *Hansen v. Fradella et al.*, Case No. 3:06-cv-01096-N (N.D. Tex.); *In re Affiliated Computer Services Derivative Litigation,* Case No. 3:06-cv-01110-O (N.D. Tex.); *Galatoire v. Fradella et al.*, Case No. 3:06-cv-01205-N (N.D. Tex.); *In re Affiliated ComputerServices Derivative Litigation,* Case No. 3:06-cv-01212-M (N.D. Tex.); *Pipefitters Local No. 636 Defined Benefit Plan v. Zale Corporation et al.,* Case No. 3:06-cv-01470-N (N.D. Tex.); *Massachusetts Laborers Annuity Fund v. Michaels Stores Inc et al.,* Case No. 3:06-cv-01635-N (N.D. Tex.); *Beatrice et al v. Home Solutions of America, Inc et al.,* Case No. 3:06- cv-01665-N (N.D. Tex.); *City of Pontiac Police and Fire Retirement System v. Kartsotis et al.,* Case No. 3:06-cv-01672-F (N.D. Tex.); *Minich v. Kartsotis et al.,* Case No. 3:06-cv-01977-P (N.D. Tex.); *Crowell v. Mannatech Inc et al.,* Case No. 3:07-cv-00238-K (N.D. Tex.); *Vella v. Kartsotis et al.*, Case No. 3:07-cv-00955-F (N.D. Tex.); *Rines v. Heelys Inc et al.,* Case No. 3:07-cv-01468-K (N.D. Tex.); *Securities and ExchangeCommission v. Stanford International Bank Case No. Ltd et al.,* Case No. 3:09-cv-00298-N (N.D. Tex.); *Buettgen v. Harless et al.,* Case No. 3:09-cv-00791-K (N.D. Tex.); *Heffner v. Harless et al.,* Case No. 3:09-cv-00938-K (N.D. Tex.); *Goldberg v. Klein et al.*, Case No. 3:09-cv-01049-K (N.D. Tex.); *Bill Rains et al v Zale Corporation, et al.,* Case No. 3:09-cv-02133-B (N.D. Tex.); *Lawyer v. Zale Corporation et al.,* Case No. 3:09-cv-02218-B (N.D. Tex.); *Hopson v. MetroPCS Communications Inc et al.,* Case No. 3:09-cv-02392-G *Richardson v. SolarWinds Inc et al.*, Case No. 3:10-cv-02085-B (N.D. Tex.); *North Port Firefighters' Pension et al v. Temple-Inland Inc. et al.,* Case No. 3:11-cv-03119-B (N.D. Tex.); *Bauman v. Simmons et al.*, Case No. 3:11-cv-03607-M (N.D. Tex.); *Brady v. Kosmos Energy, Ltd. et al.*, Case No. 3:12-cv-00373-B (N.D. Tex.); *Mounger v. Kosmos Energy Ltd et al.,* Case No. 3:12-cv-02383-B (N.D. Tex.); *Hohenstein v. Behringer Harvard REIT I, Inc. et al.*, Case No. 3:12-cv-03772-G (N.D. Tex.); *Herrley v. Frozen Food Express Industries, Inc.*, Case No. 3:13-cv-03004-B (N.D. Tex.); *Wallis v. Frozen Food Express Industries Inc et al.,* Case No. 3:13-cv-03104-B (N.D.

3

Tex.); *Securities and Exchange Commission v. Arcturus Corporation et al.,* Case No. 3:13-cv-04861-K (N.D. Tex.); *Kumar v. Santander Consumer USA Holdings Inc. et al.,* Case No. 3:14-cv-03746-K (N.D. Tex.); *Panes v. Trinity Industries Inc et al.,* Case No. 3:15-cv-01316-N (N.D. Tex.); *Isolde v. Trinity Industries Inc et al.,* Case No. 3:15-cv-02093-K (N.D. Tex.); *Budde v. Global Power Equipment Inc et al.,* Case No. 3:15-cv-02120-M (N.D. Tex.); *Steck v. Santander Consumer USA Holdings Inc. et al.*, Case No. 3:15-cv-02129-K (N.D. Tex.); *Kenney v. Pier 1 Imports Inc. et al.,* Case No. 3:15-cv-02798-D (N.D. Tex.); *Town of Davie Police Pension Plan v. Pier 1 Imports Inc et al.,* Case No. 3:15-cv-03415-S (N.D. Tex.); *In re United Development Funding IV Securities Litigation,* Case No. 3:15-cv-04030-M (N.D. Tex.); *McCloskey et al v. Match Group Inc et al.,* Case No. 3:16-cv-00549-S (N.D. Tex.); *Securities and Exchange Commission v. Narayan et al.*, Case No. 3:16-cv-01417-M (N.D. Tex.); *Securities and Exchange Commission v. Faulkner et al.*, Case No. 3:16-cv-01735-D (N.D. Tex.); *Ramirez v. Exxon Mobil Corporation et al.*, Case No. 3:16-cv-03111-K (N.D. Tex.); *Ashraf v. Energy Transfer Partners LP et al.,* Case No. 3:17-cv-00118-B (N.D. Tex.); *Irving Firemen's Relief & Retirement System v. Signet Jewelers Limited et al.,* Case No. 3:17-cv-00875-D (N.D. Tex.); *Sciabacucchi v. State National Companies Inc. et al.,* Case No. 3:17-cv-02412-C (N.D. Tex.); *Block v. Interoil Corporation et al.,* Case No. 3:18-cv-00007-X (N.D. Tex.); *Iglesias v. Southcross Energy Partners, L.P. et al.,* Case No. 3:18-cv-00158-N (N.D. Tex.); *Franchi v. Southcross Energy Partners LP et al.,* Case No. 3:18-cv-00179-N  (N.D. Tex.); *Cunha v. La Quinta Holdings Inc et al.,* Case No. 3:18-cv-00540-S (N.D. Tex.); *Rosenblatt v. La Quinta Holdings, Inc. et al.*, Case No. 3:18-cv-00558-K (N.D. Tex.); *Robinson v. RSP Permian Inc. et al.*, Case No. 3:18-cv-01047-L (N.D. Tex.); *Rosenblatt v. RSP Permian Inc et al.,* Case No. 3:18-cv-01117-B (N.D. Tex.); *Franchi v. Nationstar Mortgage Holdings Inc et al.*, Case No. 3:18-cv-01170-B (N.D. Tex.); *Chun v. Fluor Corporation et al.,* Case No. 3:18-cv-01338-X (N.D. Tex.); *In re*

4

*Forterra, Inc Securities Litigation*, Case No. 3:18-cv-01957-X (N.D. Tex.); *Peak et al v. Zion Oil & Gas Inc et al.,* Case No. 3:18-cv-02067-X (N.D. Tex.); *Brooks v. United Development Funding III et al.,* Case No. 3:18-cv-03097-X (N.D. Tex.); *Strahan v. Cambium Learning Group Inc et al.,* Case No. 3:18-cv-03123-K (N.D. Tex.); *Fox et al v. United Development Funding III et al.,* Case No. 3:19-cv-00274-M (N.D. Tex.); *Linenweber v. Southwest Airlines Co et al.,* Case No. 3:20-cv-00408-K (N.D. Tex.); *Union Asset Management Holding AG v. Fluor Corporation et al.,* Case No. 3:20-cv-00518-X (N.D. Tex.); *Shen v. Exela Technologies Inc et al.,* Case No. 3:20-cv-00691-D (N.D. Tex.); *Schulze v. Hallmark Financial Services Inc et al.*, Case No. 3:20-cv-01130-X (N.D. Tex.); *Torres v. Berry Corporation et al.,* Case No. 3:20-cv-03464-S (N.D. Tex.); *Securities and Exchange Commission v. Randall*, Case No. 3:21-cv-00979-N (N.D. Tex.); *Damore v. RadioShack Corporation et al.*, Case No. 4:07-cv-00179-A (N.D. Tex.); *Pappas et al v. Simpson et al.,* Case No. 4:10-cv-00094-Y (N.D. Tex.); *Ruedelstein v. U.S. Concrete, Inc. et al.,* Case No. 4:17-cv-00266-O (N.D. Tex.); *Mullins v. AZZ, Inc. et al.,* Case No. 4:18-cv-00025-Y (N.D. Tex.); *Fox et al v. United Development Funding III et al.,* Case No. 4:20-cv-00150-O (N.D. Tex.); *In Re Six Flags Entertainment Corporation Derivative Litigation,* Case No. 4:20-cv-00262-P (N.D. Tex.); *Martin et al v. Reid-Anderson et al.,* Case No. 4:20-cv-00311-P (N.D. Tex.); *Albayrak v. Reid-Anderson et al.*, Case No. 4:20-cv-00312-P (N.D. Tex.); *Genesee County Employees' Retirement System v. FirstCash Holdings Inc et al.,* Case No. 4:22-cv-00033-P (N.D. Tex.); *van der Gracht de Rommerswael v. Speese et al.,* Case No. 4:17-cv-00227-ALM-CMC (E.D. Tex.); *Alaska Electrical Pension Fund v. Brown et al*., Case No. 6:04-cv-00464-LED (E.D. Tex.); *Wayne County Employees Retirement System v. Brown et al*.*,* Case No. 6:04-cv-00466-LED (E.D. Tex.); *Sippy v. Powell, et al*., Case No. 2:03-cv-00222-TJW (E.D. Tex.); *Acaldo v. Pilgrim's Pride Corporation et al*., Case No. 2:08-cv-00419-JRG (E.D. Tex.); *Howes v. Pilgrim's Pride Corporation et al*., Case No. 2:08-cv-00443-JRG

5

(E.D. Tex.); *Nemky v. Trinity Industries, Inc. et al*., Case No. 2:15-cv-00732-JRG (E.D. Tex.); *Barry Family LP v. Electronic Data Sys, et al*., Case No. 4:02-cv-00300-LED (E.D. Tex.); *Braun, et al v. Electronic Data Sys, et al.,* Case No. 4:02-cv-00304-LED (E.D. Tex.); *Harnik v. Electronic DataSys, et al*., Case No. 4:02-cv-00308-LED (E.D. Tex.); *Bridgewater Partners v.Electronic Data Sys, et al*., Case No. 4:02-cv-00310-LED (E.D. Tex.); *Vanderwarter v. Electronic Data Sys, et al*., Case No. 4:02-cv-00314-LED (E.D. Tex.); *Thorne-Thomsen v. EDS, et al*., Case No. 4:02-cv-00321-LED (E.D. Tex.); *Britt v. EDS, et al*., Case No. 4:02-cv-00322-LED (E.D. Tex.); *Sved v. EDS, et al*., Case No. 4:02-cv-00323-LED (E.D. Tex.); *Zia v. EDS, et al.,* Case No. 4:02-cv-00329-RAS-DDB (E.D. Tex.); *Kluemper v. EDS, et al*., Case No. 4:02-cv-00331-LED (E.D. Tex.); *McLoughlin v. Electronic Data, et al*., Case No. 4:02-cv-00335-LED (E.D. Tex.); *Stanton Pharmacy v. EDS, et al.,* Case No. 4:02-cv-00336-LED (E.D. Tex.); *Fink v. Electronic Data, et al*., Case No. 4:02-cv-00365-LED (E.D. Tex.); *Angeloni v. Microtune Inc, et al*., Case No. 4:03-cv-00056-RAS-DDB (E.D. Tex.); *Morris v. Microtune Inc, et al*., Case No. 4:03-cv-00064-RAS-DDB (E.D. Tex.); *Yakuboff v. Microtune Inc, et al*., Case No. 4:03-cv-00066-RAS-DDB (E.D. Tex.); *Clark v. Microtune Inc, et al*., Case No. 4:03-cv-00082-RAS-DDB (E.D. Tex.); *Xu v. Microtune Inc, et al*., Case No. 4:03-cv-00115-RAS-DDB (E.D. Tex.); *Aiken v. Microtune Inc, et al*., Case No. 4:03-cv-00123-RAS-DDB (E.D. Tex.); *Fontana v. Microtune Inc, et al*., Case No. 4:03-cv-00133-RAS-DDB (E.D. Tex.); *Pipefitters Local v. Microtune Inc, et al*., Case No. 4:03-cv-00158-RAS-DDB (E.D. Tex.); *Wahl, et al v. Daisytek, et al*., Case No. 4:03-cv-00212-PNB (E.D. Tex.); *Chambers v. Daisytek, et al.,* Case No. 4:03-cv-00250-PNB (E.D. Tex.); *Sippy v. Powell, et al*., Case No. 4:03-cv-00328-PNB (E.D. Tex.); *Morris v. Fontaine, et al*., Case No. 4:03-cv-00409-PNB (E.D. Tex.); *PLA LLC v. Advanced Neuromodulation Systems Inc et al*., Case No. 4:05-cv-00078-RAS-DDB (E.D. Tex.); *RAI Investment Club v. Advanced Neuromodulation Systems Inc et al*., Case No. 4:05-cv-00094-RAS-DDB (E.D. Tex.);

6

*Hall v. Rent-A-Center, Inc. et al.*, Case No. 4:16-cv-00978-ALM-CMC (E.D. Tex.); *Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc. et al.*, Case No. 4:17-cv-00449-ALM (E.D. Tex.); *Witmer v. Dr. Pepper Snapple Group, Inc. et al.*, Case No. 4:18-cv-00209-ALM-KPJ (E.D. Tex.); *Celeste v. Intrusion Inc. et al.,* Case No. 4:21-cv-00307-SDJ (E.D. Tex.); *Gaynor v. Fleming Companies, et al.*, Case No. 5:02-cv-00178-TJW (E.D. Tex.); *Dolan v. Fleming Companies, et al.*, Case No. 5:02-cv-00190-TJW (E.D. Tex.); *Sved v. Fleming Companies, et al.*, Case No. 5:02-cv-00198-TJW (E.D. Tex.); *Edwards v. Fleming Companies, et al.,* Case No. 5:02-cv-00204-TJW (E.D. Tex.); *Patterson v. Fleming Companies, et al.*, Case No. 5:02-cv-00205-TJW (E.D. Tex.); *Feder v. Electronic Data Sys, et al.,* Case No. 5:02-cv-00207-DF (E.D. Tex.); *Huk v. Fleming Companies, et al.*, Case No. 5:02-cv-00208-TJW (E.D. Tex.); *Gordon v. Fleming Companies, et al.*, Case No. 5:02-cv-00212-TJW (E.D. Tex.); *Rudisill v. Fleming Companies, et al.*, Case No. 5:02-cv-00218-TJW (E.D. Tex.); *Eglinton v. Fleming Companies, et al.*, Case No. 5:02-cv-00222-TJW (E.D. Tex.); *Jackson Capital Mgt v. Fleming Companies, et al.*, Case No. 5:02-cv-00223-TJW (E.D. Tex.); *Horwitz, et al v. Electronic Data Sys, et al.*, Case No. 5:02-cv-00232-TJW (E.D. Tex.); *Miller v. Electronic Data Sys, et al.*, Case No. 5:02-cv-00233-DF (E.D. Tex.); *Thompson v. Electronic Data, et al.*, Case No. 5:02-cv-00248-DF-CMC (E.D. Tex.); *Massachusetts State v. Hansen, et al.*, Case No. 5:03-cv-00083-TJW (E.D. Tex.); *Massachusetts State v. Fleming Companies, et al.*, Case No. 5:03-cv-00204-TJW (E.D. Tex.); *Feder v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00110-LED (E.D. Tex.); *Horwitz, et al v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00111-LED (E.D. Tex.); *Miller v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00112-LED (E.D. Tex.); *Thompson v. Electronic Data, et al.*, Case No. 6:03-cv-00113-LED (E.D. Tex.); *Barry Family LP v. Electronic Data Sys, et a*l., Case No. 6:03-cv-00114-LED (E.D. Tex.); *Braun, et al v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00115-LED (E.D. Tex.); *Harnik v. Electronic Data Sys, et al.,* Case No. 6:03-

7

cv-00116-LED (E.D. Tex.); *Bridgewater Partners v. Electronic Data Sys, et al*., Case No. 6:03-cv-00117-LED (E.D. Tex.); *Vanderwarter v. Electronic Data Sys, et al.*, Case No. 6:03-cv-00118-LED (E.D. Tex.); *Thorne-Thomsen v. EDS, et al*., Case No. 6:03-cv-00119-LED (E.D. Tex.); *Britt v. EDS, et al*., Case No. 6:03-cv-00120-LED(E.D. Tex.); *Sved v. EDS, et al*., Case No. 6:03-cv-00121-LED (E.D. Tex.); *Zia v. EDS, et al*., Case No. 6:03-cv-00122-LED (E.D. Tex.); *Kluemper v. EDS, et al*., Case No. 6:03-cv-00123-LED (E.D. Tex.); *McLoughlin v. Electronic Data, et al*., Case No. 6:03-cv-00124-LED (E.D. Tex.); *Stanton Pharmacy v. EDS,et al*., Case No. 6:03-cv-00125-LED (E.D. Tex.); *Fink v. Electronic Data, et al*., Case No. 6:03-cv-00128-LED (E.D. Tex.); *Marcus v. J.C. Penney Company, Inc. et al.,* Case No. 6:13-cv-00736-RWS-KNM (E.D. Tex.); *Gilbert v. J.C. Penney Company, Inc. et al*., Case No. 6:13-cv-00810-RWS-KNM (E.D. Tex.); *Johnson v. J.C. Penney Company, Inc. et al*., Case No. 6:14-cv-00722-KNM (E.D. Tex.); *PFS Investments Inc et al v. De Leeuw et al*., Case No. 6:16-cv-00429-MHS-JDL (E.D. Tex.); *Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc. et al*., Case No. 6:16-cv-01243-RWS(E.D. Tex.); *Kim v. Adeptus Health Inc. et al*., Case No. 6:17-cv-00150-RWS (E.D. Tex.); *McKnight v. TXU Corp, et al.*, Case No. 9:02-cv-00274-JH (E.D. Tex.); *Trading Group v. TXU Corp, et al*., Case No. 9:02-cv-00307-JH JIS (E.D. Tex.); *The Duck Pond CRT Ltd v. PAA Natural Gas Storage, L.P. et al*., Case No. 4:13-cv-03170 (S.D. Tex.); *Rougier v. Applied Optoelectronics, Inc. et al.,* Case No. 4:17-cv-02399 (S.D. Tex.); *Heck v. Orion Group Holdings, Inc. et al*., Case No. 4:19-cv-01337 (S.D. Tex.); *Hoffman v. RCI Hospitality Holdings, Inc. et al*., Case No. 4:19-cv-01841 (S.D. Tex.); *Ludovissy et al v. Bellicum Pharmaceuticals, Inc. et al*., Case No. 4:19-cv-02450 (S.D. Tex.); *Miller et al. v. Cadence Bancorporation et al*., Case No. 4:19-cv-03492 (S.D. Tex.); *Miskella v. Christmann et al*., Case No. 4:21-cv-01836 (S.D. Tex.); *Brodeen v. Christmann et al.,* Case No. 4:21-cv-02082 (S.D. Tex.); *Pirelli Armstrong, et al v. Hanover Compressor*, et al., Case No. 4:02-cv-00410 (S.D. Tex.);

8

*Lampkin, et al v. UBS Painewebber Inc, et al.*, Case No. 4:02-cv-00851 (S.D. Tex.); *Anderson v. Hanover Compressor, et al.,* Case No. 4:02-cv-02306 (S.D. Tex.); *Equitec-Cole Roesler v. McClanahan, et al.,* Case No. 4:02-cv-04048 (S.D. Tex.); *Securities & Exchange v. Rocky Mountain Energy, et al.,* Case No. 4:03-cv-01133 (S.D. Tex.); *Capstone Asset Management Company v. AOL Time Warner Inc et al.*, Case No. 4:06-cv-00306 (S.D. Tex.); *Brodsky v. Superior Offshore International, Inc et al.*, Case No. 4:08-cv-01297 (S.D. Tex.); *In Re: Repros Therapeutics, Inc. Securities Litigation*, Case No. 4:09-cv-02530 (S.D. Tex.); *Simpson et al v. Repros Therapeutics, Inc et al.*, Case No. 4:09-cv-03127 (S.D. Tex.); *In Re: BP plc Securities Litigation*, Case No. 4:10-md-02185 (S.D. Tex.); *Davis et al v. Duncan EnergyPartners L.P. et al.*, Case No. 4:11-cv-02486 (S.D. Tex.); *Matthews v. Rynd et al.*, Case No. 4:11-cv-02706 (S.D. Tex.); *Phillips v. Harvest Natural Resource et al.*, Case No. 4:13-cv-00801 (S.D. Tex.); *Myers v. Harvest Natural Resources, Inc. et al.,* Case No.  4:13-cv-01139 (S.D. Tex.); *Knoll v. Phillips et al.*, Case No. 4:13-cv-01528 (S.D. Tex.); *Wolfson v. PNGS GP LLC et al.*, Case No. 4:13-cv-03483 (S.D. Tex.); *Cady v. Key Energy Services, Inc. et al.*, Case No. 4:14-cv-02368 (S.D. Tex.); *Davidson v. Key Energy Service, Inc. et al.*, Case No. 4:14-cv-02403 (S.D. Tex.); *Ogden v. Cobalt International Energy, Inc. et al.*, Case No.  4:15-cv-00139 (S.D. Tex.); *John Hancock Capital Series et al v. BP, PLC et al.*, Case No. 4:15-cv-02704 (S.D. Tex.); *Ho v. Flotek Industries, Inc. et al.*, Case No. 4:15-cv-03327 (S.D. Tex.); *Walpole v. Flotek Industries, Inc. et al.*, Case No. 4:15-cv-03383 (S.D. Tex.); *Edgar v. Anadarko Petroleum Corporation et al.,* Case No. 4:17-cv-01372 (S.D. Tex.); *Stern v. Atwood Oceanics, Inc. et al.,* Case No. 4:17-cv-01942 (S.D. Tex.); *Composto v. Atwood Oceanics, Inc. et al.*, Case No. 4:17-cv-01968 (S.D. Tex.); *Carter v. Atwood Oceanics, Inc. et al.,* Case No. 4:17-cv-02013 (S.D. Tex.); *Scarantino v. Parkway, Inc. et al.*, Case No. 4:17-cv-02441 (S.D. Tex.); *Panella v. Tesco Corporation et al.*, Case No. 4:17-cv-02904 (S.D. Tex.); *The Vladimir Gusinsky Rev. Trust v. Tesco Corporation et al.*,

9

Case No. 4:17-cv-02918 (S.D. Tex.); *Scarantino v. Calpine Corporation et al.*, Case No. 4:17-cv-03256 (S.D. Tex.); *Paskowitz v. Dynegy Inc. et al.*, Case No. 4:18-cv-00027 (S.D. Tex.); *McIntyre v. Chicago Bridge & Iron Company N.V. et al.*, Case No. 4:18-cv-00273 (S.D. Tex.); *The George Leon Family Trust v. Chicago Bridge & Iron Company N.V. et al.*, Case No. 4:18-cv-00314 (S.D. Tex.); *Witmer v. Layne Christensen Company et al.*, Case No. 4:18-cv-01051 (S.D. Tex.); *Paik v. Fair et al.*, Case No. 4:18-cv-02513 (S.D. Tex.); *Edwards v. McDermott International, Inc. et al.*, Case No. 4:18-cv-04330 (S.D. Tex.);*Vladimir Gusinsky Rev. Trust v. Rowan Companies PLC et al.*, Case No. 4:18-cv-04341 (S.D. Tex.); *Van 'T Hoofd v. Nobilis Health Corp. et al.*, Case No. 4:18-cv-04727 (S.D. Tex.); *Manopla v. Lexicon Pharmaceuticals, Inc. et al.,* Case No. 4:19-cv-00301 (S.D. Tex.); *Kokareva v. Bristow Group Inc. et al.*, Case No. 4:19-cv-00509 (S.D. Tex.); *Assad v. Penn Virginia Corporation et al.,* Case No. 4:19-cv-00656 (S.D. Tex.); *In Re: Anadarko Petroleum Corporation Securities Litigation*, Case No. 4:20-cv-00576 (S.D. Tex.); *Griggs v. Crown Castle International Corp. et al.,* Case No. 4:20-cv-00843 (S.D. Tex.); *Alexander et al v. Conn's Inc. et al.*, Case No. 4:20-cv-01705 (S.D. Tex.); *Ahnefeldt et al v. Dickson et al.,* Case No. 4:20-cv-02539 (S.D. Tex.); *Delaware County Employees Retirement System v. Cabot Oil & Gas Corporation et al.*, Case No. 4:21-cv-02045 (S.D. Tex.); *Coggins v. Camber Energy, Inc. et al.*, Case No. 4:21-cv-03574 (S.D. Tex.); *Justin Pierce and Hillary Kay, Derivatively on Behalf of AT&T Inc. v. Randall L. Stephenson, et al.*, Cause No. DC-14-13645, (193rd District Court, Dallas County, Texas); *Jacob Hulsebus, et al. v. Belo Corp., et al.*, Cause No. DC-13-06601, (68th District Court, Dallas County, Texas); *Ron Phillips and Scott Moorehead, Derivatively on Behalf of CLST Holdings, Inc., v. Timothy S. Durham, et al.*, Cause No. DC-10-07655 (134th District Court, Dallas County, Texas); *Regan Held, et al., v. C. Kelly Hall, et al.*, Cause No. CC-11-05258-D, (County Court No. 4, Dallas County, Texas); *David Flecker, Individually and on Behalf of All Others Similarly Situated and Derivatively*

10

*on Behalf of Pioneer Southwest Energy Partners L.P.*, Cause No. DC-13-05371-G (134th District Court, Dallas County, Texas); *In re U.S. Home Systems, Inc. Shareholder Litigation*, Cause No. CC-12-04962-B (County Court No. 2, Dallas County, Texas); *Terry Neff, Derivatively on Behalf of Weatherford International Ltd., et al., v. Nicholas F. Brady, et al.*, Cause No. 2010-40764 (270th District Court, Harris County, Texas); *In re Burlington Northern Santa Fe Corporation Shareholder Class Action Litigation,* Cause No. 348-241465-09,  (348th District Court, Tarrant County, Texas) *Dillingham v. Schmitz,* Cause No. 2005C119934 (288th District Court, Bexar County, Texas); *Holowach v. Gilliland, et al.*, Cause No. 017-221963-07 (17th District Court, Tarrant County, Texas); *Levy Investments v. Donald Steen, et al.,* Cause No. DC-07-00208 (101st District Court Dallas County, Texas); *In re Petco Animal Supplies, Inc., Shareholder Litigation,* Case No. GIC 869399 (Superior Court, San Diego, California); *Frank Capovilla v. Lone Star Technologies, Inc., et al.,* Cause No. DC-07-002979 (14th District Court, Dallas County, Texas); *Louis Dudas v. Encore Medical Corporation, et al.,* Cause No. D-1-GN-002495 (345th District Court, Travis County, Texas); *Waggoner v. Ryan, et al,* Cause No. CC-05-13893 (County Court at Law No. 2, Dallas County, Texas); *Evans v. Paulson, et al.,* Cause No. 05-01818-JMR-FLN (D. Minn.); In *re Accuray, Inc. Shareholder Derivative* Litigation, Case No. C 09 05580 CW (N.D. Cal.); *In re Microtune, Inc. Litigation,* Cause No. 219-03729-2010 (219th District Court, Collin County, Texas); *Edward Ferguson v. Louis Raspino*, *et al*., Cause No. 2010-23805 (281st District Court, Harris County, Texas); *In re Duncan Energy Partners L.P. Shareholder Litigation*, Cause No. 2011-13981 (269th District Court, Harris County, Texas); and many others.

11

**JOE KENDALL**

Former United States District Judge Joe Kendall is the owner of Kendall Law Group.  Mr. Kendall served on the federal bench in the Northern District of Texas from 1992-2002, appointed by President George Herbert Walker Bush.  He was unanimously confirmed by the U.S. Senate. At the time of his appointment, he was the youngest U.S. District Judge in the country.  He also served as state district judge of the 195th Judicial District Court in Dallas from 1987-1992.  In his judicial career, he has presided over approximately 500 jury trials and disposed of over 11,000 cases.  Mr. Kendall has a B.B.A. from the Cox School of Business at Southern Methodist University and a law degree from Baylor University.  Mr. Kendall served as a Commissioner on the United States Sentencing Commission from 1999 through 2002, appointed by President Bill Clinton.

Since leaving the bench for economic reasons and returning to trial work, Mr. Kendall has had tremendous success at the prosecution of patent and class action litigation either as lead, co-lead or local counsel.

While on the federal bench, Mr. Kendall handled class actions of various types and presided over numerous civil jury trials, including complex litigation, securities, antitrust, qui tam, medical malpractice, products liability, and patent infringement cases.  He presided over a multi-district litigation case, and also environmental and CERCLA cases.  He is the author of more than 250 judicial opinions published in the federal reporters or legal research databases. In his career as a lawyer, Mr. Kendall has personally tried more than 100 jury trials to judgment.

Additionally, Mr. Kendall taught new federal judges for the Federal Judicial Center in Washington, D.C. and has taught docket management techniques to experienced federal judges throughout the country.  He is a former board member of the Federal Judges Association and was editor of *In Camera*, the newsletter of the Federal Judges Association.

# EXHIBIT B



# FIRM RESUME



Milberg Coleman Bryson Phillips Grossman ("Milberg") is an AV-rated international law firm with more than 100 attorneys and offices across the United States, the European Union, and South America. Combining decades of experience, Milberg was established through the merger of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP.

Milberg prides itself on providing thoughtful and knowledgeable legal services to clients worldwide across multiple practice areas. The firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights. We have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar service to our clients. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to numerous leadership roles in prominent national mass torts and class actions.

> *Milberg challenges corporate wrongdoing through class action, mass tort, consumer and shareholder right services, both domestically and globally.*

In the United States, Milberg currently holds more than 100 court-appointed full- and co-leadership positions in state and federal courts across the country. Our firm has offices in California, Chicago, Florida, Georgia, Illinois, Kentucky, Louisiana, Mississippi, New Jersey, New York, North Carolina, South Carolina, Tennessee, Washington, Washington D.C., and Puerto Rico. Milberg's commitment to its clients reaches beyond the United States, litigating antitrust, securities, and consumer fraud actions in Europe and South America, with offices located in the United Kingdom, and the Netherlands. Milberg prides itself on providing excellent service worldwide.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, Time Magazine, Lawdragon, and Super Lawyers, among others.

> *"A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."*
> - THE NEW YORK TIMES

APP. 097

# PRACTICE AREAS

## SECURITIES FRAUD

Milberg pioneered the use of class action lawsuits to litigate claims involving investment products, securities, and the banking industry. Fifty years ago, the firm set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg remains among the most influential securities litigators in the United States and internationally.

Milberg and its attorneys were appointed Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases throughout its history.

## ANTITRUST & COMPETITION LAW

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## FINANCIAL LITIGATION

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## CONSUMER PROTECTION

Milberg's Consumer Protection Practice Group focuses on improving product safety and protecting those who have fallen victim to deceptive marketing and advertising of goods and services and/or purchased defective products. Milberg attorneys have served as Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases alleging the sale of defective products, improper marketing of products, and violations of consumer protection statutes.

## DANGEROUS DRUGS & DEVICES

Milberg is a nationally renowned firm in mass torts, fighting some of the largest, wealthiest, and most influential pharmaceutical and device companies and corporate entities in the world. Our experienced team of attorneys has led or co-led numerous multidistrict litigations of defective drugs and medical devices.

APP. 098

## EMPLOYMENT & CIVIL RIGHTS

Milberg's Employment & Civil Rights attorneys focus on class actions and individual cases nationwide arising from discriminatory banking and housing practices, unpaid wages and sales commissions, improperly managed retirement benefits, workplace discrimination, and wrongful termination.

## ENVIRONMENTAL LITIGATION & TOXIC TORTS

Milberg's Environmental Litigation & Toxic Torts Practice Group focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. Milberg and its attorneys have held leadership roles in all facets of litigation in coordinated proceedings, with a particular focus on developing the building blocks to establish general causation, which is often the most difficult obstacle in an environmental or toxic tort case.

## STATE & LOCAL GOVERNMENTS

Milberg attorneys are dedicated to defending the Constitutional and statutory rights of individuals and businesses that are subjected to unlawful government exactions and fees by state and local governments or bodies.

## INFORMATION TECHNOLOGY

Milberg is a leader in the fields of cyber security, data breach litigation, and biometric data collection, litigating on behalf of clients — both large and small — to change data security practices so that large corporations respect and safeguard consumers' personal data.

## APPELLATE

Consisting of former appellate judges, experienced appellate advocates, and former law clerks who understand how best to present compelling arguments to judges on appeal and secure justice for our clients beyond the trial courts, Milberg's Appellate Practice Group boasts an impressive record of success on appeal in both state and federal courts.

# LEADERSHIP ROLES

In re: Google Play Consumer Antitrust Litigation

In re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation

In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation

In re: Blackbaud Inc., Customer Data Breach Litigation

In re: Paragard IUD Products Liability Litigation

In re: Seresto Flea & Tick Collar, Marketing Sales Practices & Product Liability Litigation

In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation

In re: Allergan Biocell Textured Breast Implant Products Liability Litigation

In re: Zicam Cold Remedy Marketing, Sales Practices and Products Liability Litigation

In re: Guidant Corp. Implantable Defibrillators Product Liability Litigation

In re: Ortho Evra Products Liability Litigation

In re: Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation

In re: Kugel Mesh Hernia Patch Products Liability Litigation

In re: Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation

In re: Stand 'N Seal Products Liability Litigation

In re: Chantix (Varenicline) Products Liability Litigation

In re: Fosamax (alendronate Sodium) Products Liability Litigation

In re: Benicar (Olmesartan) Products Liability Litigation

In re: Onglyza (Saxagliptin) & Kombiglyze Xr (Saxagliptin & Metformin) Products Liability Litigation

In re: Risperdal and Invega Product Liability Cases

In re: Mirena IUS Levonorgestrel-Related Products Liability Litigation

In re: Incretin-based Therapies Product Liability Litigation

In re: Reglan/Metoclopromide

In re: Levaquin Products Liability Litigation

In re: Zimmer Nexgen Knee Implant Products Liability Litigation

In re: Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation

In re: Propecia (Finasteride) Products Liability Litigation

In re: Transvaginal Mesh (In Re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation; In Re Ethicon, Inc., Pelvic Repair System Products Liability Litigation; In Re Boston Scientific, Inc., Pelvic Repair System Products Liability; In Re American Medical Systems, Pelvic Repair System Products Liability, and others)

In re: Fluoroquinolone Product Liability Litigation

In re: Depuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation

In re: Recalled Abbott Infant Formula Products Liability Litigation

Home Depot, U.S.A., Inc. v. Jackson

Webb v. Injured Workers Pharmacy, LLC

APP. 100

# NOTABLE RECOVERIES

### $4 Billion Settlement
In re: Prudential Insurance Co. Sales Practice Litigation

### $3.2 Billion Settlement
In re: Tyco International Ltd., Securities Litigation

### $1.14 Billion Settlement
In Re: Nortel Networks Corp. Securities Litigation

### $1 Billion-plus Trial Verdict
Vivendi Universal, S.A. Securities Litigation

### $1 Billion Settlement
NASDAQ Market-Makers Antitrust Litigation

### $1 Billion Settlement
W.R. Grace & Co.

### $1 Billion-plus Settlement
Merck & Co., Inc. Securities Litigation

### $775 Million Settlement
Washington Public Power Supply System Securities Litigation

### $586 Million Settlement
In re: Initial Public Offering Securities Litigation

APP. 101

# LOCATIONS

**PUERTO RICO**
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

**CALIFORNIA**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212

402 West Broadway, Suite 1760
San Diego, California 92101

**FLORIDA**
201 Sevilla Avenue, Suite 200,
Coral Gables, Florida 33134

3833 Central Avenue
St. Petersburg, Florida 33713

**ILLINOIS**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

**LOUISIANA**
5301 Canal Boulevard
New Orleans, Louisiana 70124

**MICHIGAN**
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301

**NEW JERSEY**
1 Bridge Plaza North, Suite 675
Fort Lee, New Jersey 07024

**NEW YORK**
100 Garden City Plaza, Suite 500
Garden City, New York 11530

405 E 50th Street
New York, New York 10022

**NORTH CAROLINA**
900 West Morgan Street
Raleigh, North Carolina 27603

5 West Hargett Street, Suite 812
Raleigh, North Carolina 27601

**SOUTH CAROLINA**
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

**TENNESSEE**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

**WASHINGTON**
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

17410 133rd Avenue, Suite 301
Woodinville, Washington 98072

**WASHINGTON, D.C.**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015

**NETHERLANDS**

**UNITED KINGDOM**

APP. 102



# EXHIBIT C

**Laukaitis**Law  www.laukaitislaw.com
✉ klaukaitis@laukaitislaw.com



# Kevin Laukaitis, Esq.

Owner/Founder, Laukaitis Law LLC

**Practice**
- Litigation, Consumer Class Action

**Education**
- Temple University - Beasley School of Law, J.D.
- Drexel University, B.S. Business Administration

**Admitted to Practice**
- Pennsylvania
- New Jersey
- United States District Court for the Eastern District of Pennsylvania
- United States District Court for the Middle District of Pennsylvania
- United States District Court for the District of New Jersey
- United States District Court for the Northern District of Illinois
- United States District Court for the Eastern District of Michigan

Kevin Laukaitis is the Owner and Founder of Laukaitis Law LLC. He focuses most of his practice on litigation, with a particular emphasis on consumer class actions. Kevin has extensive experience handling complex litigation matters, in state and federal courts, on behalf of consumers who have been wronged by companies that have violated the law.

Kevin graduated from Drexel University with a B.S. in Business Administration with a focus in Marketing. He received his J.D from Temple University Beasley School of Law, where he was a part-time evening program student. During law school, Kevin worked full-time as a paralegal where he gained practical experience in all aspects of class action litigation. Upon graduating, Kevin worked as an attorney at two class action law firms before founding Laukaitis Law LLC.

## Legal Successes

Kevin has played a prominent role in many class action lawsuits against deregulated energy companies that have engaged in deceptive practices by overcharging consumers on their energy bills. Kevin's efforts have resulted in over $70 million in recovery to classes of consumers who were overcharged by these energy companies. The class action settlements include:

- *Mercado, et al. v. Verde Energy USA, Inc., et al.*, No. 18-cv-2068, United States District Court for the Northern District of Illinois (appointed lead class counsel in the case and obtained $7 million for a class of Illinois, Massachusetts, New Jersey, New York, Ohio, and Pennsylvania customers of Verde Energy)
- *Bell v. Gateway Energy Services Corporation*, No. 031168/2018 (N.Y. Supr. County of Rockland) (appointed lead class counsel in the case and obtained $12.833 million for a class of New York, New Jersey, Pennsylvania, Maryland, and Virginia customers of Gateway Energy)


Case 3:24-cv-00279-K    Document 35    Filed 01/31/25    Page 108 of 109    PageID 571
www.laukaitislaw.com
✉ klaukaitis@laukaitislaw.com

- *Austin v. Kiwi Energy Services LLC*, No. 515350/2017 (New York State Supreme Court, Kings County) (appointed lead counsel and obtained over $1 million for a class of customers of Kiwi Energy)

- *Hamlen v. Gateway Energy Services Corporation*, No. 7:16-cv-03526-VB-JCM, United States District Court for the Southern District of New York (appointed class counsel and worked on the team who obtained $9.25 million for a class of New York, New Jersey, Pennsylvania, Maryland, Virginia, Kentucky, and Ohio customers of Gateway Energy)
- *Lori Sanborn, et al. v. Viridian Energy Inc., et al.*, No. 3:14-cv-01731-SRU, United States District Court for the District of Connecticut (worked on the team who obtained $18.5 million for a class of customers of Viridian Energy)
- *Basile v. Stream Energy Pennsylvania, LLC, et al.*, Case No.1:15-cv-01518-YK, United States District Court for the Middle District of Pennsylvania (worked on lead class counsel team who obtained $13.5 million for a class of Pennsylvania customers of Stream Energy)
- *Amy Silvis v. Ambit Northeast LLC*, No. 2:14-cv-05005, United States District Court for the Eastern District of Pennsylvania (worked on lead class counsel team who obtained $9.3 million for a class of Pennsylvania customers of Ambit Energy)
- *Sobiech v. U.S. Gas & Electric, Inc.*, No. 14-cv-04464, United States District Court for the Eastern District of Pennsylvania (worked on lead class counsel team who obtained $1.25 million for a class of customers of Pennsylvania Gas & Electric)

Kevin has also been appointed class counsel in *Neversink General Store, et al. v. Mowi USA, LLC, et al.*, No. 20-cv-09293 (S.D.N.Y.), which resulted in a $1.3 million settlement for a class of purchasers of deceptively labeled salmon products and *Quezada, et al. v. Arbitersports, LLC*, No. 20-cv-05193 (E.D. Pa.), which resulted in a settlement for a class of over 500,000 sports referees who had their personal information compromised in a data breach.

Kevin is involved in many pending class action lawsuits and MDLs, including *IN RE: Seresto Flea And Tick Collar Marketing, Sales Practices And Products Liability Litigation*, No. 21-cv-04447 (N.D. Ill.), where he serves on the Executive Committee; and he serves as Interim Co-Lead in an increasing number of Data Breach lawsuits, including *Jackson, et al. v. Suffolk University*, 1:23-cv-10019-DJC (D. Mass); *Guerrero v. Merritt Healthcare Holdings, LLC*, 3:23-cv-00389-MPS (D. Conn.); *In re Whitworth University Data Breach*, 2:23-cv-00179 (E.D. Wash.); *Wang, et al. v. Corporation of Mercer University*, 5:23-cv-00193 (M.D. Ga.); *Brent, et al. v. Advanced Medical Management, LLC*, No. C-03-CV-23-002826 (Md. Cir. Ct.); *Kaefring, et al. v. University of Iowa Community Medical Services, LLC d/b/a UI Community Homecare*, CVCV084433 (Iowa Dist.); *In re Honeywell International Inc. Data Breach Litig.*, No. 3:23-cv-594 (W.D.N.C.); and *Kolkind v. DMS Health Technologies*, 3:23-cv-204


(D.N.D.). Kevin also serves on the Plaintiff's Executive Committee in *Skurauskis, et al. NationsBenefits Holdings LLC, et al.,* 0:23-cv-60830 (S.D. Fla.) and *Lipps, et al. v. LCS Financial Services Corporation*, 23-cv-2565 (D. Colo.).

Kevin was also part of the lead class counsel team who worked on *Taha v. County of Bucks*, No. 12-06867, United States District Court for the Eastern District of Pennsylvania, a seminal case that resulted in a jury verdict for a certified class of nearly 68,000 people. The jury awarded each member of the class $1,000 in punitive damages. The case was ultimately settled on classwide basis resulting in significant financial recovery for the class.

## Professional Associations and Activities

- American Bar Association
- Public Justice
- Philadelphia Trial Lawyers Association